# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lyft, Inc.,                   :
              Petitioner     :
                        :
         v.                :    No. 843 C.D. 2015
                        :
Pennsylvania Public Utility    :
Commission,                    :
              Respondent   :

Kim Lyons and PG Publishing, Inc.   :
d/b/a The Pittsburgh Post-Gazette,   :
              Petitioners    :
                        :
         v.                :    No. 974 C.D. 2015
                        :
Pennsylvania Public Utility    :    Argued: December 9, 2015
Commission,                    :
              Respondent   :

BEFORE:    HONORABLE DAN PELLEGRINI, President Judge[1]
              HONORABLE BONNIE BRIGANCE LEADBETTER, Judge[2]
              HONORABLE RENÉE COHN JUBELIRER, Judge
              HONORABLE ROBERT SIMPSON, Judge
              HONORABLE MARY HANNAH LEAVITT, Judge[3]
              HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge

**OPINION**
**BY JUDGE SIMPSON**[4]             **FILED: August 31, 2016**

---

[1] This case was argued on or before December 31, 2015, when President Judge Pellegrini assumed the status of senior judge.

[2] This case was argued on or before January 31, 2016, when Judge Leadbetter assumed the status of senior judge.

[3] This case was argued before January 4, 2016, when Judge Leavitt became President Judge.

[4] This case was reassigned to the author on July 27, 2016.

Before us are the consolidated petitions for review filed by Lyft, Inc. (Lyft) and Kim Lyons, a reporter for PG Publishing, Inc., d/b/a The Pittsburgh Post-Gazette (collectively, PG) from two orders of the Public Utility Commission (PUC). Lyft challenges the PUC's rejection of the alleged proprietary status of its trip data for the period before it obtained experimental authority to operate as a transportation network company (TNC).[5] Lyft argues the PUC misapplied the standard for a protective order, and that its decision is unsupported by substantial evidence. PG seeks review of the PUC's denial of its intervention to ensure public access to PUC proceedings, and more specifically to Lyft's trip data. PG asserts the PUC erred in denying it party status because its intervention at the administrative level is necessary to assure the public's right of access to PUC proceedings. As to proprietary status, we affirm the PUC; however, because PG achieved its interest in intervention, we dismiss PG's cross-appeal.

## I. Background

Lyft offers a mobile ride-sharing application (Lyft App) that connects riders with drivers, who may at their discretion provide riders with transportation for compensation. Lyft filed two applications with the PUC for authority to provide experimental transportation service, one application covering Allegheny County, and one covering the entire Commonwealth. Following hearings, the administrative law judges (ALJs) assigned to the case issued initial decisions denying Lyft's applications. Lyft filed exceptions. Ultimately, the PUC approved the applications, granting Lyft experimental authority to operate.

---

[5] Trip data represent the number of trips provided in a span of time using the Lyft App. Trip data do not include the pick-up location or destination or any customer information.

2

In a separate PUC proceeding, the Bureau of Investigation and Enforcement (BIE) filed a complaint against Lyft alleging violation of the Public Utility Code (Code), 66 Pa. C.S. §§101-3316. BIE also filed a petition for interim emergency order, requesting Lyft cease and desist its operations in Allegheny County. The ALJs granted BIE's cease and desist petition, and certified the matter to the PUC as a material question. The PUC granted BIE's petition and directed Lyft to cease and desist from using the Lyft App until it secured authority to operate, or until BIE's complaint was dismissed. Lyft and BIE subsequently settled the complaint without Lyft admitting any liability.

During the hearings on the applications, the ALJs issued an interim order requesting evidence as to the number of trips Lyft provided in Pennsylvania through the Lyft App before receiving authority to operate. Specifically, it sought the number of trips in Allegheny County during the following three timeframes: (1) from the initiation of Lyft's service in February 2014 to June 5, 2014 (the date BIE filed the complaint); (2) from June 5, 2014 to July 1, 2014 (the effective date of the cease and desist order); and, (3) from July 1, 2014 to August 8, 2014 (the date the record in the complaint proceeding closed). Lyft filed a petition for a protective order pursuant to 52 Pa. Code §5.423 (recodified at §5.365), asserting the proprietary nature of the trip data. The ALJs denied the protective order.

The ALJs held an additional hearing on September 3, 2014 (September 3rd hearing), where Lyft requested the ALJs to hold disclosure in abeyance pending the PUC's disposition of the matter. Lyft then presented testimony as to the protective order in a closed proceeding where Kim Lyons was

removed. PG unsuccessfully challenged removal at that time. Thereafter, PG filed a petition for interim emergency order (Emergency Petition), seeking to intervene in the application proceedings for the limited purpose of opposing Lyft's protective order and any future attempts to seal the record from public access. PG also asked that the record of the September 3rd hearing be unsealed in its entirety. Lyft filed an answer to PG's Emergency Petition, to which PG replied.

Relevant here, Lyft filed a petition seeking interlocutory review of the ALJs' denial of its protective order (Interlocutory Petition). Therein, Lyft asked the PUC to address whether "the trip data of TNCs constitute proprietary information and/or a trade secret that must be restricted from public disclosure." Reproduced Record (R.R.) at 388a. Importantly, Lyft appended to its Interlocutory Petition an affidavit of its Director of Public Policy, Joseph Okpaku, which had not been submitted to the ALJs with its petition for protective order. PG asked the PUC for permission to respond, which the PUC granted.

In September 2014, the Secretary of the PUC issued a Secretarial Letter directing PG and the parties to the application proceeding to address the factors currently set forth in 52 Pa. Code §5.365 regarding orders to limit access to proprietary information. PG and Lyft addressed the alleged proprietary nature of the trip data. In its submission, PG also advocated the public's common law and constitutional[6] rights to access judicial proceedings.

_____

[6] The First Amendment of the U.S. Constitution provides: "Congress shall make no law … abridging the freedom of speech, or of the press …." U.S. CONST. amend. I. The Pennsylvania Constitution also provides "[a]ll courts shall be open …." PA. CONST. art. I, §11.

4

Ultimately, the PUC concluded the trip data were not proprietary, and it ordered unsealing of the record within 10 days (Proprietary Order). In the same order, the PUC denied PG's Emergency Petition seeking to intervene because PG did not establish immediate or irreparable harm.

On the merits, the PUC reasoned: "[t]he information at issue, the aggregate number of trips Lyft provided prior to receiving authority to operate in Pennsylvania, is of obvious concern to the public and would only be protected from disclosure for extraordinary reasons. Lyft has failed to provide such reasons." PUC Op., 10/23/14, at 17. In so concluding, the PUC considered and rejected Mr. Okpaku's affidavit. After noting Lyft's submission of the affidavit was improper, the PUC found it unpersuasive.

The PUC confirmed the trip data are not "the number of rides in a particular market or the concentration of pick-ups and drop-offs in specific segments of that market. Nor does the information include the start time, duration, location, destination, mileage, charges and other details of these rides." Id. It noted the total number of trips in one service territory does not reveal sales patterns, analogizing trip data to the gross sales data to which protection was denied in In re Exelon, 2000 Pa. PUC LEXIS 50, Dkt. No. P-00991752 (filed July 20, 2000). Id. at 19. Such aggregated data did not warrant protection as proprietary.

Because Lyft filed an application to operate in the Commonwealth, the PUC explained "[t]ransparency is critical and will not be compromised on specious grounds." Id. at 18. Application proceedings require consideration of the

public interest in an applicant's service. Here, the PUC determined the public interest weighed in favor of disclosure because the number of trips during the period before Lyft received authority to operate posed a risk to public safety.

Lyft filed a petition for reconsideration, which the PUC granted. On reconsideration, the PUC affirmed the Proprietary Order (Reconsideration Order).[7] Lyft sought a stay of the Reconsideration Order, which the PUC granted.

Lyft petitions for review of the Proprietary Order as confirmed in the Reconsideration Order. Lyft asks us to reverse the PUC as to the proprietary nature of Lyft's aggregate trip data.

PG requested limited intervention in Lyft's appeal, asserting a direct interest in ensuring public access to PUC proceedings and the trip data. Lyft moved to strike PG's request. Raiser-PA, LLC (Raiser), Lyft's primary TNC competitor, also asked to intervene to support the proprietary status of trip data, which the PUC moved to strike. After hearing argument on motions to strike, this Court granted PG intervenor status and denied Raiser's request. Significant to our reasoning below, PG participates in Lyft's appeal as a party. Raiser participates as *amicus curiae* aligned with Lyft's position.

PG filed a cross-petition for review of the Proprietary Order to the extent the PUC denied intervention. Lyft filed a notice to intervene in PG's

---

[7] Commissioners Pamela A. Witmer and James H. Cawley dissented.

appeal. This Court consolidated the matters.[8] After briefing and oral argument, these appeals are ready for disposition.[9]

## II. Discussion

We are mindful of the limitations inherent within appellate review of an agency adjudication. It is well-established that:

> the PUC's interpretations of the Code, the statute for which it has enforcement responsibility, and its own regulations are entitled to great deference and should not be reversed unless clearly erroneous. [On review], the Court should neither 'substitute its judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the commission's expertise,' nor should it indulge in the process of weighing evidence and resolving conflicting testimony.

Energy Conservation Council of Pa. v. Pa. Pub. Util. Comm'n, 25 A.3d 440, 449 (Pa. Cmwlth. 2011) (quoting Energy Conservation Council of Pa. v. Pa. Pub. Util. Comm'n, 995 A.2d 465, 478 (Pa. Cmwlth. 2010) (citation omitted)).

The PUC's decision must be supported by substantial evidence, meaning more than a mere trace of evidence or suspicion of the existence of a fact sought to be established. Norfolk & W. Ry. Co. v. Pa. Pub. Util. Comm'n, 413 A.2d 1037 (Pa. 1980). The party seeking affirmative relief from the PUC bears the burden of proving its claims with competent evidence. Milkie v. Pa. Pub. Util.

---

[8] We also granted PG's application to strike parts of Lyft's reply brief and references to Mr. Okpaku's affidavit as it was not submitted to the ALJs in the application proceedings.

[9] "Appellate review of a PUC order is limited to determining whether a constitutional violation, an error of law, or a violation of PUC procedure has occurred and whether necessary findings of fact are supported by substantial evidence." Popowsky v. Pa. Pub. Util. Comm'n, 910 A.2d 38, 48 (Pa. 2006).

7

Comm'n, 768 A.2d 1217 (Pa. Cmwlth. 2001). That the record may contain evidence that supports a different result than that reached by the PUC is irrelevant so long as the record contains substantial evidence supporting the PUC's decision. Wheeling v. Pa. Pub. Util. Comm'n, 778 A.2d 785 (Pa. Cmwlth. 2001).

These consolidated appeals present substantive and procedural issues. Substantively, we are asked whether the PUC erred in denying Lyft's protective order and determining trip data do not merit proprietary status. Lyft contends the PUC did not analyze the proper factors as to trade secrets and erred in holding the public interest in disclosure outweighed any proprietary interest. Procedurally, we are asked to reverse the PUC's decision denying intervenor status to PG as an advocate of public access. PG claims a right to intervene in the public interest to ensure the application proceedings and the related record remain open.

In the matters before us, Lyft bears the burden of proving the necessity of a protective order, and PG bears the burden of proving a necessity for emergency relief in the form of intervention. Considering their respective burdens, we evaluate the parties' claims.

### A. Protective Order

Lyft argues the PUC erred in denying its protective order as to trip data. Lyft contends the trip data evidence qualifies as confidential proprietary information subject to seal. Lyft also asserts the PUC did not apply the proper analysis for determining whether the trip data qualified as a trade secret.

Section 5.365 of the PUC's regulations, 52 Pa. Code §5.365, (Regulation) governs protective orders in PUC proceedings. Patterned after Pennsylvania Rule of Civil Procedure No. 4012,[10] the Regulation provides:

> (a) General rule for adversarial proceedings. A petition for protective order to limit the disclosure of a trade secret or other confidential information on the public record will be granted only when a party demonstrates that the potential harm to the party of providing the information would be substantial and that the harm to the party if the information is disclosed without restriction outweighs the public's interest in free and open access to the administrative hearing process. A protective order to protect trade secrets or other confidential information will apply the least restrictive means of limitation which will provide the necessary protections from disclosure. In considering whether a protective order to limit the availability of proprietary information should be issued, the Commission or the presiding officer should consider, along with other relevant factors, the following:
>
> (1) The extent to which the disclosure would cause unfair economic or competitive damage.
>
> (2) The extent to which the information is known by others and used in similar activities.
>
> (3) The worth or value of the information to the party and to the party's competitors.
>
> (4) The degree of difficulty and cost of developing the information.
>
> (5) Other statutes or regulations dealing specifically with disclosure of the information.

---

[10] See Joint App. of Bell Atl. Corp. & GTE Corp., 1999 Pa. PUC LEXIS 56, Dkt. Nos. A-310200F0002; A-310222F0002; A0310291F0003; A-311350F0002 (filed June 10, 1999).

Id. (emphasis added). The PUC applies the Regulation to non-adversarial proceedings as well. See, e.g., Petition of United Tel. Co. of Pa. LLC d/b/a CenturyLink for Protective Order, 2011 Pa. PUC LEXIS 2065, *5, Dkt. No. P-2011-2230988; P-00981410 (filed April 14, 2011) (granting protective order as to marketing and business strategy and specific exchange area of broadband deployment; total deployment and percentages of broadband not confidential as "such aggregated data is not competitively sensitive"); Petition of United Tel. Co. of Pa. d/b/a Embarq Pa. for Protective Order, 2009 Pa. PUC LEXIS 2336, Dkt. Nos. P-2009-2099567; P-00981410 (filed April 17, 2009) (same).

The Regulation sets forth a two-step inquiry, which includes consideration of the five factors contained therein. "[A] party seeking a protective order has a substantial burden to show that[:] [1] disclosure of the information for which protection is sought will result in substantial harm[;] and[,] [2] that harm outweighs the significant public interest in open proceedings." Petition for Protective Order of GTE N. Inc., 1996 Pa. PUC LEXIS 95, *4-5, Dkt. No. G-00940402 (filed August 8, 1996) (granting protective order as to marketing, pricing and engineering information developed at party's expense which was unavailable to the general public). The Regulation requires the PUC to balance the alleged proprietary nature against the public interest in disclosure. Proprietary nature is viewed against a public policy favoring access to the administrative process. Id.

The Code and PUC regulations protect public access. The PUC is required to "make part of the public record" all documents it relies on in reaching a decision. 66 Pa. C.S. §335(d). PUC regulations also provide that PUC records,

10

including those of application proceedings, may be accessed by the public. 52 Pa. Code §§1.71-1.77. In particular: "[t]he [PUC's] record maintenance system is intended to provide for the greatest degree of public access to [PUC] documents that is consistent with the exercise of the functions of the [PUC] under the act and other applicable laws." 52 Pa. Code §1.71. However, an exception may be made for a record containing proprietary information when the PUC determines its public release will cause substantial harm to the party seeking the exception. 66 Pa. C.S. §335(d).

## 1. Proprietary Status

First, Lyft argues the PUC misapplied the Regulation by not assessing whether the trip data were proprietary before balancing any proprietary nature against public access. It contends the PUC should have used the six-factor test for trade secrets set forth in Crum v. Bridgestone/Firestone North American Tire, 907 A.2d 578 (Pa. Super. 2006), which this Court employed when analyzing trade secrets under the Right-to-Know Law (RTKL).[11] See, e.g., Dep't of Pub. Welfare v. Eiseman, 85 A.3d 1117 (Pa. Cmwlth. 2014), rev'd, 125 A.3d 19 (Pa. 2015); Dep't of Revenue v. Flemming (Pa. Cmwlth., No. 2318 C.D. 2014, filed August 21, 2015) (unreported), 2015 WL 5457688. However, Lyft's argument is predicated on its presumption that the PUC is bound by this Court's precedent to apply the Crum test here. In so presuming, Lyft disregards that the definition of trade secret in PUC regulations differs from that contained in the RTKL or in the Uniform Trade Secrets Act (Act), 12 Pa. C.S. §§5301-5308.[12]

---

[11] Act of February 14, 2008, P.L. 6, 65 P.S. §§67.101-67.3104.

[12] The RTKL and the Uniform Trade Secrets Act define "trade secrets" as:

**(Footnote continued on next page…)**

11

In the absence of a test under the RTKL, this Court adopted the Crum test to determine trade secret status in the RTKL context because the legislature chose to define "trade secret" in the RTKL identically to the definition in the Act. That justification does not exist here.

Lyft offers no grounds for adopting the Crum test in the PUC context when PUC regulations define trade secret differently and provide a multi-factor test for assessing proprietary status.[13] The Regulation sets forth several factors regarding proprietary status, similar to those in Crum.[14] Accordingly, the PUC did not err in applying the Regulation to discern proprietary status.

_____

**(continued…)**

> [i]nformation including a formula, drawing, pattern, compilation … a customer list, program, device, method, technique or process that:
>
> (1) derives economic value, actual or potential, from not being generally known to and not being readily ascertainable by proper means by other persons who can obtain economic value from its disclosure or use; [and]
>
> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

See Section 102 of the RTKL, 65 P.S. §67.102 and Section 5302 of the Uniform Trade Secrets Act, 12 Pa. C.S. §5302. PUC regulations define "trade secret" as: "A private formula, pattern, device, cost study or compilation of information which is used in a business and which, if disclosed, would provide the opportunity to obtain an advantage over competitors who do not know or use it." 52 Pa. Code §1.8.

[13] Aside from lacking merit, this argument was waived by Lyft's failure to raise it during the administrative proceedings. 2 Pa. C.S. §703.

[14] The Crum factors are: (1) the extent to which the information is known outside of the business; (2) the extent to which the information is known by employees and others in the business; (3) the extent of measures taken to guard the secrecy of the information; (4) the value of the information to his business and to competitors; (5) the amount of effort or money expended in developing the information; and, (6) the ease of difficulty with which the information could be properly acquired or duplicated by others.

12

We are equally unpersuaded that the PUC misapplied the Regulation. The PUC is entitled to deference in the application of its regulations. Energy Conservation Council. Also, it is evident in its decisions that the PUC considered the factors contained in the Regulation when performing the balancing test.

Lyft bore the burden of proving that the harm resulting from disclosure of the trip data would be both substantial *and* outweigh the public's interest in free and open access to the administrative hearing process. The PUC concluded Lyft failed to satisfy its burden. On this record, we agree.

As described, the trip data do not reveal any details about the trips. The data state only the number of trips over three different timeframes, all occurring before Lyft had authority to operate in Allegheny County. The total number of trips is aggregated without any reference to drivers, customers, or specific locations within Allegheny County. This lack of detail does not permit the "customer targeting" the PUC recognizes may cause competitive harm. As such, we agree with the PUC that the trip data are aggregated information[15] lacking sufficient detail to allow a competitor to cause substantial competitive harm.

---

[15] Aggregated data are also not exempt under the trade secrets exception in Section 708(b)(11) of the RTKL, 65 P.S. §67.708(b)(11). See Section 708(d), 65 P.S. §67.708(d). The term "Aggregated data" is defined in the RTKL as "a tabulation of data which relate to broad classes, groups or categories so that it is not possible to distinguish the properties of individuals within those classes, groups or categories." Section 102 of the RTKL, 65 P.S. §67.102. Thus, to the extent Lyft contends the RTKL is another statute favoring protection of the trip data under the fifth factor of the Regulation, its reliance is misplaced.

Aggregated data are not the type of data generally protected pursuant to the Regulation. In re petition of TracFone Wireless, Inc., 2011 Pa. PUC LEXIS 62, Dkt. No. P-2011-2250661 (filed September 22, 2011) (denying protective order; number of customers enrolled in program and number disconnected from service is not proprietary). To the contrary, "[d]isclosing aggregate information is consistent with [the PUC's] prior practice" in other service contexts. See, e.g., Petition of Citizens Tel. Co. of Kecksburg for a Protective Order, 2007 Pa. PUC LEXIS 11, Dkt. No. P-00072252; P-00971229F1000 (filed March 1, 2007) (rejecting proprietary status for aggregated data despite prior practice of permitting aggregated data to be submitted under seal); ITT Commc'ns Servs. Petition for a Protective Order, 1991 Pa. PUC LEXIS 193, *3, Dkt. No. R-912017 (filed November 5, 1991) (denying protective order as financial data was "expressed in aggregate numbers, without sufficient detail to be of significant value to a competitor").

After determining the trip data contain insufficient detail for disclosure to cause substantial harm to Lyft, the PUC weighed the public interest in disclosure. In so doing, the PUC considered the content of the trip data and the import of the timing of the trips.

The PUC properly considered that the trip data showed that Lyft coordinated a number of trips in Allegheny County before it had authority to do so. As to balancing the interests, the PUC reasoned, "the aggregate number of trips Lyft provided prior to receiving authority to operate in Pennsylvania, is of obvious concern to the public and would only be protected from disclosure for

14

extraordinary reasons." PUC Op. at 17. The PUC concluded the public had a right to know about the extent of Lyft's non-compliance over various periods.

After considering the factors in the Regulation as to proprietary status, and weighing Lyft's interest in protection against the public's interest in disclosure, the PUC determined the public interest merited denial of the protection sought here. As the PUC's analysis tracked the Regulation, Lyft's challenges to its approach lack merit.

## 2. Substantial Evidence

Next, Lyft asserts the PUC's decision was not supported by substantial evidence. Lyft contends the evidence of record favored protecting the trip data. We disagree.

Significantly, Lyft bore the burden of proving the trip data qualified for proprietary status. Yet, Lyft submitted no evidence to support its contention. As the PUC points out, Lyft presented only argument in its petition for protective order; it did not buttress its claims with any documentary or testimonial evidence.[16] Lyft stated only the following regarding proprietary nature in its petition:

> Lyft participates in a highly competitive industry, as evidenced by the rapid expansion of [TNC] service across the country and the number of TNC applications filed with the

---

[16] There is no dispute Lyft presented testimony regarding the trip data at the September 3rd hearing. Lyft makes no claim that the ALJs precluded it from inquiring as to the proprietary status of the data at that time. However, the six pages of transcript corresponding to the trip data testimony are not part of the record before us and remain sealed. Nonetheless, Lyft had an obligation to preserve its objection had it attempted to present testimony on this crucial point.

PUC in 2014 alone. <u>Public disclosure of the [trip] data</u> requested by the [ALJs'] Interim Order <u>would reveal operational information</u> that would not otherwise be provided to the public <u>and could be used by competitors to extrapolate the data</u> and model Lyft's existing and potential activities in other markets.

As such, the potential harm to Lyft is substantial, and the need for proprietary protection of this information outweighs any need for public disclosure at this time.

R.R. at 275a-76a (emphasis added). At best, this explanation is speculative and vague.

In tacit recognition of the lack of evidence submitted to the ALJs, Lyft attempted to submit an affidavit to the PUC to support proprietary nature.[17] Moreover, the PUC explained that regardless of whether Lyft submitted Mr. Okpaku's affidavit to the ALJs for proper consideration, the facts alleged therein would not have altered the result. The PUC found the number of trips in Lyft's service area (Allegheny County) over a span of months, without further detail, constituted aggregate data. We agree with the PUC's well-reasoned conclusion that such aggregated data do not constitute a trade secret. See ITT.

In its brief, Lyft suggests it did not have sufficient opportunity to present evidence regarding the proprietary nature of the trip data. From our review of the record, Lyft did not notify the PUC that it lacked an opportunity to present

---

[17] There is no indication on this record that Lyft was precluded from attaching an affidavit, from Mr. Okpaku or another affiant, substantiating the alleged proprietary nature of the trip data to its petition for protective order. Lyft does not allege that the facts to which Mr. Okpaku attested were unavailable at the time Lyft sought a protective order from the ALJs.

16

evidence on this issue. Although Lyft appended Mr. Okpaku's affidavit to its Interlocutory Petition, R.R. at 391a, 398a-401a, Lyft did not advise the evidence was previously unavailable. Because Lyft failed to raise these issues before the agency, the issues are waived. <u>Wheeling</u> (noting PUC is blameless for not considering issue on which the burden-bearing party failed to present evidence).

In opposition to Lyft's petition for protective order, the record also contained two responses to Lyft's petition contesting the proprietary nature of the trip data. A protestor motor vehicle carrier subject to the Code emphasized the trip data offered insight into Lyft's management culture. R.R. at 336a-39a. PG's response amply articulated the interest in public access to the trip data. <u>Id.</u> at 371a-81a; 420a-27a. These submissions were adequate to support the PUC's conclusion that the public interest in disclosure outweighed the alleged proprietary interest of an applicant.

In analyzing proprietary status under the Regulation, the PUC recognized the important public interest in ensuring entities have the requisite authority prior to holding themselves out to the public to perform a TNC service. Because Lyft did not submit any evidence of substantial competitive harm, and the record shows a public interest in disclosure, the PUC's decision is supported by substantial evidence.

### 3. Alleged Inconsistent Treatment

Lastly, Lyft contends the denial of proprietary status is unfair because the PUC protected the trip data of its primary competitor, Raiser, in other

proceedings. Essentially, because Raiser's trip data are currently designated as proprietary, Lyft argues its trip data must be similarly protected despite procedural and evidentiary differences. Lyft also asserts the continued proprietary status of Raiser's trip data allows Raiser to obtain a competitive advantage in the Allegheny County market.

We are unpersuaded that the PUC treated aggregate trip data disparately. First, the type of proceedings in which the trip data were requested differed. Raiser was involved in a complaint and enforcement proceeding with BIE, not an application to provide services to the public. Second, Raiser's method of submission differed from that of Lyft. Raiser did not request a protective order, and so did not trigger the analysis under the Regulation. Raiser requested to submit the information under a proprietary designation; Raiser declined to provide trip data in discovery requests in the complaint proceeding. As a result, Raiser was charged with significant civil penalties for discovery violations. BIE v. Uber Tech. Inc., 2015 Pa. PUC LEXIS 527, Dkt. No. C-2014-2422723 (ALJ Recommended Decision, filed Nov. 17, 2015). Of primary significance, Raiser's submission of trip data as proprietary was not contested. Thus, the ALJs were not provided with evidence regarding the public interest to weigh against the assertions of proprietary status.

Here, in contrast, Lyft submitted a petition for a protective order under the Regulation. Also, a protestor and PG objected to the protective order. As a result, in the Lyft application proceedings, the PUC had a record of the interests countering those of Lyft.

18

That the ALJs in Raiser's complaint proceedings permitted trip data to be submitted with a proprietary designation does not trump the PUC's determination of proprietary status in Lyft's application to provide service. Because the PUC ruled on the question, future ALJs faced with the alleged proprietary status of aggregated trip data will have the benefit of the PUC's analysis, and now that of this Court.

Based on the foregoing, we uphold the Proprietary Order denying proprietary status to Lyft's aggregated trip data, and the Reconsideration Order confirming its decision as to proprietary status of the information.[18]

## B. Intervention in PUC Proceeding
### 1. Contentions

Turning to the procedural question presented, PG argues the PUC erred in denying its Emergency Petition seeking to intervene for the limited purpose of accessing the closed record and to oppose future attempts to seal the record. PG notes the PUC treated it as a party, often agreeing with its position. However, PG asserts party status is necessary to ensure it receives notice of any future attempts to seal proceedings or submissions. PG also contends the PUC erred in requiring it to establish immediate or irreparable harm when it has a right to intervene to protect the public interest.

The PUC counters that PG participated in the PUC proceedings as to the public access issue. Further, PG was not aggrieved by the PUC's Proprietary

_____

[18] As we affirm the PUC, we do not address PG's alternative grounds for public access.

Order because the PUC found in favor of PG's position on public access. Therefore, the PUC argues PG had no basis to file a cross-appeal.

## 2. Discussion

PG filed the Emergency Petition to request intervention. To establish emergency relief, PG was required to prove: (1) a clear right to relief; (2) immediacy; (3) irreparable harm; and, (4) relief will not harm the public interest. 52 Pa. Code §3.6; Glade Park East Home Owners Ass'n v. Pa. Pub. Util. Comm'n, 628 A.2d 468 (Pa. Cmwlth. 1993).

Intervention is governed by PUC regulation, 52 Pa. Code §5.72 (eligibility to intervene).[19] As the moving party, PG bore the burden of proving the necessity of its intervention.

Further, an agency's decision on intervention will not be disturbed absent "a manifest abuse of discretion." Pittsburgh Palisades Park, LLC v. Pa.

_____

[19] Section 5.72 provides in pertinent part:

(a) Persons. A petition to intervene may be filed by a person claiming a right to intervene or an interest of such nature that intervention is necessary or appropriate to the administration of the statute under which the proceeding is brought. The right or interest may be one of the following:

(1) A right conferred by statute of the United States or of the Commonwealth.

(2) An interest which may be directly affected and which is not adequately represented by existing participants, and as to which the petitioner may be bound by the action of the Commission in the proceeding.

(3) Another interest of such nature that participation of the petitioner may be in the public interest.

52 Pa. Code §5.72.

Horse Racing Comm'n, 844 A.2d 62, 65 (Pa. Cmwlth.), appeal den., 864 A.2d 1206 (Pa. 2004). An abuse of discretion is not merely an error in judgment. Bedford Downs Mgmt. Corp. v. State Harness Racing Comm'n, 926 A.2d 908 (Pa. 2007). Rather, "discretion is abused where the law is overridden or misapplied, or the judgment exercised is clearly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record." Bensalem Racing Ass'n, Inc. v. Pa. State Harness Racing Comm'n, 19 A.3d 549, 554 (Pa. Cmwlth. 2011).

The foregoing legal standards notwithstanding, several developments in this litigation make us question whether a controversy remains regarding PG's emergency request for relief in the nature of intervention. First, PG suffered no prejudice from denial of its Emergency Petition because it fully participated in the administrative proceedings on the issue of public access, and, by its own admission, was "essentially treated … as a party." See PG's Br. at 15 n.2. Second, the PUC ultimately agreed with PG's position and held that the trip data were not protected from disclosure. Because PG sought intervention as a means to that end, PG was not aggrieved.

Third, the PUC granted Lyft's application for experimental authority to operate, thereby resolving the underlying litigation before the PUC. In fact, there are no scheduled hearings that may be subject to seal; instead, the record before the PUC is closed. See Interim Order Closing the Record, filed September 17, 2014.[20]

---

[20] The PUC filed a Certified List of Documents for PUC Dkt. Nos. A-2014-2415045 and A-2014-2415047 in lieu of a certified record under Pa. R.A.P. 1952(b).

21

Fourth, despite the lack of formal party status before the PUC, this Court granted PG's request to participate as a party to Lyft's appeal here. Thus, PG may advocate the public access issue in any further appellate proceedings.

Considering these developments together, it appears the results PG sought to achieve by intervention in the PUC proceeding have been attained. Confirming this conclusion, PG concedes a ruling on intervention is requested "[i]f this Court <u>reverses</u> the PUC's decision that the trip data is [sic] subject to disclosure …." PG's Br. at 6 (questions 2 and 3 in the statement of questions involved) (emphasis added); <u>see also id</u>. at 19 ("in the event that this Court decides to <u>reverse</u> ….") (emphasis added). Thus, PG's cross-appeal is contingent on this Court's reversal of the PUC's decision on the merits. Because we unanimously affirm the PUC on the merits, there is no need to decide the intervention issue.

Moreover, "'an actual case or controversy must be extant at all stages of review …." <u>Pap's A.M. v. City of Erie</u>, 812 A.2d 591, 600 (Pa. 2002). A matter is moot when a court cannot enter an order that has any legal effect. <u>Mistich v. Pa. Bd. of Prob. & Parole</u>, 863 A.2d 116 (Pa. Cmwlth. 2004). "[M]ootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so." <u>Id.</u> at 121 (quotation omitted).

As this Court unanimously affirms that the trip data are not proprietary and may be accessed by PG and the public, we discern no current controversy capable of further remedy. Indeed, PG acknowledged "its requested relief was

22

granted." PG's Pet. for Review, ¶48.  Because the PUC allowed PG to participate fully in the proceedings, and because PG admittedly received the relief requested, we dismiss PG's cross-appeal.

### III. Conclusion

For the foregoing reasons, the PUC's Proprietary Order and the Reconsideration Order are affirmed as to the proprietary status of the trip data. Because PG obtained the relief it sought, and achieved its interest without the grant of party status, there is no further relief to be granted to PG on the intervention issue.  Accordingly, PG's cross-appeal is dismissed.

_____
ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Lyft, Inc., | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 843 C.D. 2015 |
| | : | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Respondent | : | |
| | | |
| Kim Lyons and PG Publishing, Inc. | : | |
| d/b/a The Pittsburgh Post-Gazette, | : | |
| Petitioners | : | |
| | : | |
| v. | : | No. 974 C.D. 2015 |
| | : | |
| Pennsylvania Public Utility | : | |
| Commission, | : | |
| Respondent | : | |

# **O R D E R**

**AND NOW**, this 31st day of August, 2016, the orders of the Public Utility Commission are hereby **AFFIRMED** regarding the proprietary status of the trip data. Because there is no further relief to be granted regarding the issue of intervention, and for the reasons set forth in the accompanying opinion, we **DISMISS** the cross-appeal of Kim Lyons and PG Publishing, Inc., d/b/a The Pittsburgh Post-Gazette.

ROBERT SIMPSON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Lyft, Inc., : 
       Petitioner : 
  : No. 843 C.D. 2015
    v. : 
  : 
Pennsylvania Public Utility : 
Commission, : 
       Respondent : 
  : 
Kim Lyons and PG Publishing, Inc. : 
d/b/a The Pittsburgh Post-Gazette, : 
       Petitioners : 
  : No. 974 C.D. 2015
    v. : 
  : Argued: December 9, 2015
Pennsylvania Public Utility : 
Commission, : 
       Respondent : 
  : 

BEFORE:   HONORABLE DAN PELLEGRINI, President Judge
             HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
             HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE ROBERT SIMPSON, Judge
             HONORABLE MARY HANNAH LEAVITT, Judge
             HONORABLE P. KEVIN BROBSON, Judge
             HONORABLE PATRICIA A. McCULLOUGH, Judge

**CONCURRING & DISSENTING OPINION**
**BY JUDGE McCULLOUGH**               **FILED: August 31, 2016**

       I agree with the Majority insofar as it affirms the order of the Pennsylvania Public Utility Commission (PUC) concluding that the trip data

maintained by Lyft, Inc. (Lyft), did not constitute proprietary information and/or a trade secret, but respectfully dissent from the Majority decision insofar as it dismisses the cross-appeal of Kim Lyons and PG Publishing, Inc., d/b/a The Pittsburgh Post-Gazette (PG), from the PUC's order denying its Emergency Petition seeking to intervene in the PUC proceedings.

The Majority essentially concludes that the matter is moot, questioning "whether a controversy remains regarding PG's emergency request for relief in the nature of intervention." Slip op. at 21. In this regard, the Majority holds that PG suffered no prejudice from the denial of its Emergency Petition because it fully participated in the PUC proceedings on the issue of public access, the PUC ultimately agreed with PG's position that the trip data were not protected from disclosure, the litigation before the PUC was resolved and the record closed, and this Court granted PG's request to participate as a party in Lyft's appeal here.

However, there is an exception to the mootness doctrine "where the conduct complained of is capable of repetition yet likely to evade review, where the case involves issues important to the public interest or where a party will suffer some detriment without the court's decision." *Sierra Club v. Pennsylvania Public Utility Commission*, 702 A.2d 1131, 1134 (Pa. Cmwlth. 1997), *affirmed*, 731 A.2d 133 (Pa. 1999). I believe the exception is applicable here both because this issue may arise in future proceedings before the PUC and this matter involves issues important to the public interest, i.e., unregulated operation of a business in this Commonwealth and deprivation of PG's fundamental First Amendment right to gather news and disseminate that news to the general public.

To that extent, I disagree with the Majority's holding discussed above. The fact that the PUC ultimately ruled in PG's favor on the issue of proprietary

information and that PG participated in Lyft's appeal to this Court does not warrant dismissal of PG's cross-appeal. As noted above, this case involved important issues of public interest, including the denial of a First Amendment right. Section 3.6 of the PUC's regulations, pertaining to petitions for interim emergency orders, provided PG with the appropriate procedural vehicle to assert this right and there was nothing here to justify the denial of PG's petition on either a procedural or substantive basis.

The record herein establishes that Lyft began operating in Pennsylvania in February 2014 without the approval of the PUC and continued to do so until at least July 2014, when the PUC granted a cease and desist order requested by the Bureau of Investigation and Enforcement. In resolving the issue regarding the proprietary nature of Lyft's trip data, the PUC ultimately determined that the public interest weighed in favor of disclosure because the number of trips during the period before Lyft received authority to operate posed a risk to public safety. Moreover, during the hearings before the PUC on this issue, PG's reporter, Ms. Lyons, was required to leave the room.

The long line of well-established case law authority of both this Commonwealth and the Federal Courts, including the U.S. Supreme Court, made it clear that the First Amendment is the keystone of our Constitutional Republic. *See*, *e.g.*, *New York Times Co. v. Sullivan*, 376 U.S. 254, 269-70 (1964); *Grosjean v. American Press Co.*, 297 U.S. 233, 245 (1936)*; Loadholtz v. Fields*, 389 F.Supp. 1299, 1300 (M.D. Fla. 1975); *Gmerek v. State Ethics Commission*, 751 A.2d 1241, 1259 (Pa. Cmwlth. 2000), *aff'd by an equally divided Court*, 807 A.2d 812 (Pa. 2002). A free press unimpeded in its ability to gather and disseminate the news is essential in the preservation of our First Amendment freedoms, absent compelling

interests to the contrary (and subject to the established tenets regarding reckless disregard for the truth and malice aforethought). *McMullan v. Wohlgemuth*, 308 A.2d 888, 896 (Pa. 1973), *appeal dismissed*, 415 U.S. 970 (1974); *see also Branzburg v. Hayes*, 408 U.S. 665, 727 (1972) (Stewart, J., dissenting). Ms. Lyons and PG were denied this opportunity here.

For these reasons, I would not dismiss PG's cross-appeal as moot. Rather, after applying the exception to the mootness doctrine, I would reverse the PUC's order denying PG's petition for an interim Emergency Order.

_____
PATRICIA A. McCULLOUGH, Judge