IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard N. Myers,                           :
                    Petitioner              :
                                            :
          v.                                :      No. 1337 C.D. 2019
                                            :
Pennsylvania Public Utility                 :      Submitted: April 28, 2023
Commission,                                 :
                    Respondent              :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE ELLEN CEISLER, Judge
           HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE McCULLOUGH                                 FILED: November 3, 2023


          Richard N. Myers (Petitioner) petitions for review, *pro se*, of the August 29, 2019 Opinion and Order (Final Order) of the Pennsylvania Public Utility Commission (PUC) dismissing Petitioner's Formal Complaint filed against PPL Electric Utilities Corporation (PPL) due to his failure to prove that PPL's installation of automated metering infrastructures (smart meters) at his properties constitutes unsafe or unreasonable service under Section 1501 of the Public Utility Code (Code), 66 Pa. C.S. §1501. Because we conclude that Petitioner's issues on appeal have been resolved by the Pennsylvania Supreme Court's recent decision in *Povacz v. Pennsylvania Public Utility Commission*, 280 A.3d 975 (Pa. 2022), we affirm the PUC's Order.

## I.    FACTS AND PROCEDURAL HISTORY

          On July 20, 2017, PPL informed Petitioner that a smart meter would be installed in his residence in accordance with Section 2807(f)(1) and (2) of the Code, 66

Pa. C.S. § 2807(f)(1) and (2) (Act 129).[1] (Reproduced Record (R.R.) at 291a.) Having concerns regarding his exposure to radio frequency (RF) fields or electromagnetic energy from the smart meter, Petitioner filed a Complaint with the PUC on August 11, 2017, seeking to prohibit PPL from installing smart meters at his home and his 11 rental properties located within Lancaster and Columbia, Pennsylvania. *Id* at 292a. Petitioner claimed unsafe or unreasonable utilities services under Section 1501 of the Code and requested that PPL provide scientific research studies to show that high frequency electromagnetic radiation from smart meters is safe. *Id*. Petitioner further claimed that the PUC ignored an opt-out provision within Act 129 and requested an exemption from smart meter installation. *Id*.

PPL filed an Answer to the Complaint on September 11, 2017. In its Answer, PPL denied that smart meters pose any health or safety risk and asserted that

---

[1] Section 2807 of the Code was added by the Act of October 15, 2008, P.L. 1592, No. 129, and took effect on November 14, 2008. Section 2807(f)(1) and (2) of the Code provides:

(f) Smart meter technology and time of use rates.—

(1) Within nine months after the effective date of this paragraph, electric distribution companies [(EDCs)] shall file a smart meter technology procurement and installation plan with [the PUC] for approval. The plan shall describe the smart meter technologies the [EDC] proposes to install in accordance with paragraph (2).

(2) [EDCs] shall furnish smart meter technology as follows:

(i)     Upon request from a customer that agrees to pay the cost of the smart meter at the time of the request.

(ii)    In new building construction.

(iii)   In accordance with a depreciation schedule not to exceed 15 years.

66 Pa. C.S. § 2807(f)(1) and (2).

smart meters meet all applicable safety requirements under state and federal law. *Id*. PPL noted that Petitioner failed to allege that he or his tenants suffered from any specific health or safety effects resulting from the installation of smart meters. *Id.* PPL further claimed that nothing in the Code states that a customer can opt-out of smart meter installation. *Id.*

The matter was assigned to Administrative Law Judge Elizabeth H. Barnes (ALJ Barnes) for an evidentiary hearing on April 2, 2018. Petitioner appeared *pro se* and presented the testimony of David O. Carpenter, M.D. *Id*. at 293a. PPL appeared with counsel and presented the testimony and exhibits of Mr. William Hennegan, Mr. Scott Larson, Christopher Davis, Ph.D., and Mark Israel, M.D. *Id*.

On August 16, 2018, ALJ Barnes issued her Initial Decision denying and dismissing Petitioner's Complaint. *Id* at 293a-94a. The ALJ found, in relevant part, that Petitioner failed to prove by a preponderance of the evidence that the installation of smart meters within Petitioner's properties constitutes unsafe or unreasonable service under Section 1501. ALJ Barnes further found that there is no provision in the Code or the PUC's Regulations or Orders that allows a customer to "opt-out" of smart meter installation. *Id*.

Petitioner filed 19 Exceptions to the Initial Decision, and PPL filed only one, all of which were consolidated and referred to the PUC for final disposition. On August 29, 2019, the PUC issued its Opinion and Order denying all of Petitioner's Exceptions, granting PPL's Exception,[2] and adopting the Initial Decision with one modification as a Final Order.

---

[2] PPL filed an Exception to ALJ Barnes' fire safety recommendations, stating that it was unnecessary given the company's established practices and procedures. The PUC found that ALJ Barnes' fire concerns were not supported by the record and modified the Initial Decision to eliminate the fire safety recommendations.

On September 25, 2019, Petitioner filed a Petition for Review (PFR) of the Final Order. After the filing of briefs, this Court stayed the proceedings in the instant matter on January 15, 2020, pending the disposition of three consolidated appeals, containing the same or similar Act 129 smart meter installation issues as those raised by Petitioner.

## II. ISSUES PRESENTED

In his *pro se* PFR, Petitioner lists a number of arguments but generally contends that the PUC committed an error of law in its interpretation of Act 129 by denying his request to opt-out of smart meter installation. He further argues that the PUC incorrectly weighed evidence and improperly found that he failed to sustain his burden of proof that the installation of smart meters constitutes unsafe or unreasonable service in violation of Section 1501 of the Code.

## III. DISCUSSION

### A. The Pennsylvania Supreme Court's Decision in *Povacz*

Petitioner contends that the PUC erred by holding Act 129 mandated smart metering for all Pennsylvanians with no opt-out provision. However, the Pennsylvania Supreme Court has held that "Act 129 . . . does not provide electric customers the ability to opt-out of having a smart meter installed." *Povacz*, 280 A.3d at 983.

In *Povacz*, the Supreme Court granted review of five questions, all of which involved two overarching issues: (1) whether Act 129 mandates universal installation of smart meters without an "opt-out" mechanism for consumers; and (2) whether the PUC applied the correct burden of proof to the *Povacz* Consumers' claims under Section 1501. *Povacz*, 280 A.3d at 988-89. The Supreme Court ultimately affirmed, in part, and reversed, in part. Pertinent to the instant case, the Supreme Court

4

concluded that Act 129 mandates that EDCs "furnish smart meters to all electric customers within an electric distribution service area and does not provide electric customers the ability to opt out of having a smart meter installed." *Povacz*, 280 A.3d at 983. *See also id.* at 998-99 ("Considering the overall goal of Act 129 to promote energy efficiency and conservation in Pennsylvania, the plain language of Section 2807(f)(2) mandates the system-wide installation of smart meter technology, including smart meters, with no opt-out provision. We reject the Commonwealth Court's contrary holding that, although EDCs are required to furnish smart meters, customers may choose to reject one.").

Applying this standard to the *Povacz* Consumers' requests for opt-out accommodations, the Supreme Court concluded:

> Claiming an unfettered right to avoid RF emissions, [*Povacz* Consumers] request accommodation based on their medical histories and demonstrated desire to avoid or minimize exposure to RF emissions. They consider the appropriate relief to be the removal of wireless smart meters installed on their properties and the installation of an alternative meter. In response, [the PUC and Pennsylvania Electric Company (PECO)] object to having to provide [*Povacz* Consumers] with accommodations absent a finding that smart meter technology violates Section 1501.

> Pursuant to our interpretation of Act 129 as mandating the installation of smart meter technology, *a customer may not prevent the installation of a smart meter.* That said, a customer is *not without recourse*, as the provision of accommodations is a function of Section 1501, not of Act 129. Indeed, absent a mandate, there would be no need for the complaint procedure provided in the Code to electric customers who oppose installation of a smart meter. As in this case, a customer can *file a claim under Section 1501* that smart meter technology service is unsafe and/or unreasonable. If the customer establishes by a *preponderance*

5

*of the evidence* based on the totality of the circumstances that smart meter service violates Section 1501, [he or she] [is] entitled to an *accommodation* to the extent allowed by Act 129 and a utility's tariff. Thus, by operation of the statute, an EDC cannot be required to provide accommodation without the finding of a Section 1501 violation.

. . . .

*Act 129 is mandatory*, requiring the system-wide installation of smart meter technology by EDCs, including smart meters. Although electric customers are *not entitled to opt out of having a smart meter installed at their home, the PUC is authorized to determine and prescribe a remedy to individual customers who establish a violation of Section 1501 by a preponderance of the evidence that furnishing smart meter technology to them is unsafe or unreasonable*. Reference to a preponderance of the evidence burden of proof and a "conclusive causal connection" evidentiary standard to assess whether expert evidence meets that burden is not inconsistent. The burden for proving a safety or reasonableness violation under Section 1501 is the same, where the challenge is based on the effect on the health of the customer.

*Id.* at 1013-14 (citation and footnote omitted) (emphasis added).

The PUC's Opinion and Order reflect that the PUC decided this case consistent with the Supreme Court's decision in *Povacz*. Petitioner cannot opt-out of smart meter installation and has failed to satisfy the burden to receive an accommodation. *Povacz* makes clear that "Act 129 … does not provide electric customers the ability to opt-out of having a smart meter installed." *Povacz*, 280 A.3d at 983.

### B. Proof that installation of Smart Meters on Property violates Section 1501 of the Code

Petitioner's second issue concerns how a consumer may prove a violation of Section 1501 by a "preponderance of the evidence," and he argues that he met that standard. He further argues that the conclusive causal connection to meet the preponderance of the evidence standard is impossible to prove. The PUC contends it

6

properly determined that Petitioner failed to prove that installation of the smart meter on his properties violates Section 1501 of the Code, and that the PUC applied the correct burden of proof. We must agree. The *Povacz* Court directed:

> The *preponderance burden* requires a customer to prove that a service or facility is—more likely than not—the cause of the problem described in [his or her] complaint. Specific to smart meters and RF emissions, the burden is two-fold. First, a customer must present *expert opinion* rendered to a *reasonable degree of scientific certainty* that smart meters emit RFs and that RF emissions cause adverse health effects and, second, expert opinion rendered to a *reasonable degree of medical certainty* that RF emissions from the smart meters, either alone or cumulative to other sources of RF emissions, caused [ ] harm.  Once the [customer] produces such evidence, the utility may then defend by providing scientific and/or medical expert testimony that, within a reasonable degree of certainty, the RF emissions from smart meters did not cause the alleged harm. The fact finder must then weigh the evidence and decide whether it is more likely than not that the smart meter causes harm to the customer.
>
> . . . .
>
> "*Conclusive causal connection*" means that the proffered evidence must support the conclusion that a causal connection existed between a service or facility and the alleged harm. It is not possible for evidence that is inconclusive to be sufficient to meet the preponderance of the evidence standard. Inconclusive means that the evidence does not lead to a conclusion of a definite result one way or the other. While the preponderance of the evidence standard is not stringent, it does require that the plaintiff's evidence ever so slightly (like, with the weight of a feather) supports the plaintiff's contention. Evidence that does not support a conclusion (or is inconclusive) cannot meet that minimal burden. . . . Thus, where scientific evidence is required to establish the safety of a service or facility, use of the evidentiary standard of

"conclusive causal connection" to assess the evidence is correct.

A customer's evidence certainly need not be based on absolute certainty, thereby removing all doubt that a factual assertion is correct. However, evidence of a mere possibility that harm could result is never sufficient to meet a preponderance of the evidence standard.

*Id.* at 1006-07 (emphasis added).

As noted by the PUC, Petitioner argues that RF emissions are unsafe, and makes arguments concerning the Federal Communication Commission's guidelines. As noted above, the Court in *Povazc* held that a customer alleging a violation of Section 1501 as to harm from the RF emissions must present an expert opinion rendered to a reasonable degree of scientific certainty that RF emissions from the smart meters cause adverse health effects, and an expert opinion rendered to a reasonable degree of medical certainty that RF emissions either alone or cumulative to other sources of RF emissions, cause harm. *Id.* at 1006.

The *Povacz* Court went further to note that, "[e]ven if the customer's expert testimony was sufficient to meet the preponderance of the evidence burden of proof, the *PUC was free to conclude that the contrary evidence was more weighty.*" *Povacz*, 280 A.3d at 1008 (emphasis added); *see also Lyft, Inc. v. Pennsylvania Public Utility Commission*, 145 A.3d 1235, 1240 (Pa. Cmwlth. 2016). It further explained, in reversing this Court's remand, that a customer is required to prove by a preponderance of the evidence that the furnishing of a service or facility is "*unsafe or unreasonable.*" *Povacz*, 280 A.3d at 1012 (emphasis added). The Supreme Court found that customers can only request a reasonable accommodation after meeting the burden of proving a violation of Section 1501, and any accommodation is limited by Act 129 and the terms of the EDC's tariff. *Id.* at 1013-14.

Here, after finding that PPL met its burden of proof, and that the burden shifted to Petitioner who did not introduce any further evidence demonstrating a causal connection, the PUC agreed with ALJ Barnes that there was insufficient evidence of adverse effect to Petitioner by the smart meter or that it will constitute unsafe or unreasonable service or alleged harm. The PUC also found that Petitioner had not proven a violation of Section 1501 and cannot now seek an accommodation. PPL and the PUC gave less weight to Petitioner's studies on biological and adverse health effects from non-thermal radiation. Rather, the PUC found that PPL's experts, Dr. Davis and Dr. Israel, were well qualified and persuasive. Petitioner's arguments essentially ask this Court to reweigh the evidence, which it cannot do. *Energy Conservation Council of Pennsylvania. v. Pennsylvania Public Utility Commission*, 25 A.3d 440, 449 (Pa. Cmwlth. 2011) ("the Court should neither 'substitute its judgment for that of the PUC when substantial evidence supports the PUC's decision on a matter within the [PUC's] expertise,' nor should it indulge the process of weighing evidence and resolving conflicting testimony").

Therefore, the Court must affirm the PUC's determination.[3]

---

[3] Before ALJ Barnes, Petitioner attempted to rely on materials not introduced before the PUC and raised for the first time in Petitioner's Brief and/or Reply Brief. ALJ Barnes declined to reopen the record as she found no new or novel evidence showing any changes in the facts or law that would warrant such. *See* 52 Pa. Code §§ 5.431(b), 5.571(d) (after close of the record additional matter may be relied on only for good cause shown, and the record may be reopened only if conditions of fact or law have changed). It is clear that Pa.R.A.P. 1951(a) provides that any document not made part of the certified record may not become part of a record on appeal. Hence, when reviewing an administrative agency's decision, this Court may not consider matters that are not part of the record before the agency. *See* Pa.R.A.P. 1951(a). Petitioner now also claims here, for the first time, that the PUC violated 18 Pa.C.S. §§ 2701-2702 regarding simple assault and aggravated assault because the smart meters are harming customers and that by mandating smart meters the PUC violated article I of the Pennsylvania Constitution, Pa. Const., art. I, and the Fourth Amendment of the United States Constitution, U.S. Const. amend XIV. However, because Petitioner did not raise these issues before the PUC, this Court cannot review the same as they are deemed waived. *See* Pa.R.A.P. 1551(a). The

**(Footnote continued on next page…)**

9

## IV.   CONCLUSION

Accordingly, in light of the Supreme Court's holdings in *Povacz*, which are dispositive of Petitioner's issues on appeal, and Petitioner's failure to raise other issues before the PUC which are now deemed waived, we must affirm the PUC's Order.

_____

PATRICIA A. McCULLOUGH, Judge

Judge Fizzano Cannon did not participate in this decision.

---

exceptions concerning validity of a statute, questions involving jurisdiction and other issues that could have been raised before the government unit are not applicable here. *See Sugar House HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353, 365 (Pa. 2017).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard N. Myers,　　　　　　　　　:
　　　　　　　Petitioner　　　　　　:
　　　　　　　　　　　　　　　　　　:
　　　　　v.　　　　　　　　　　　　:　No. 1337 C.D. 2019
　　　　　　　　　　　　　　　　　　:
Pennsylvania Public Utility　　　　　　:
Commission,　　　　　　　　　　　　:
　　　　　　　Respondent　　　　　　:

## ***ORDER***

AND NOW, this 3rd day of November, 2023, the August 29, 2019 Opinion and Order of the Pennsylvania Public Utility Commission is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge