S. Brian CRUM, Administrator of the Estate of David Foster Crum, Deceased, In His Own Right and on Behalf of the Next of Kin

v.

BRIDGESTONE/FIRESTONE NORTH AMERICAN TIRE, LLC, Robert J. Moore, General Motors, Sunoco, Inc., Ellwood Kieser & Sons, Inc., d/b/a Kiesers TBA Center, Stockburger Chevrolet, Barry and Lois Luff, Luff & Gallagher Tire, Inc., Barry R. Luff Auto Repair, Inc. and Kerrigan Automotive, Inc.

Appeal of Bridgestone/Firestone North American Tire, LLC.

Robert J. Moore, Administrator of the Estate of Andrew Earl Moore, Deceased, And Robert J. Moore, In His Own Right and on Behalf of the Next of Kin,

v.

Bridgestone/Firestone North American Tire, LLC, Brian S. Crum, General Motors, Sunoco, Inc., Ellwood Kieser & Sons, Inc., d/b/a Kiesers TBA Center, Stockburger Chevrolet, Barry and Lois Luff, Luff & Gallagher Tire, Inc., Barry R. Luff Auto Repair, Inc. and Kerrigan Automotive, Inc.

Appeal of Bridgestone/Firestone North American Tire, LLC.

S. Brian Crum, Administrator of the Estate of David Foster Crum, Deceased, In His Own Right and on Behalf of the Next of Kin

v.

Bridgestone/Firestone North American Tire, LLC, Robert J. Moore, General Motors, Sunoco, Inc., Ellwood Kieser & Sons, Inc., d/b/a Kiesers TBA Center, Stockburger Chevrolet, Barry and Lois Luff, Luff & Gallagher Tire, Inc.,

Barry R. Luff Auto Repair, Inc. and Kerrigan Automotive, Inc.

Appeal of Bridgestone/Firestone North American Tire, LLC.

Robert J. Moore, Administrator of the Estate of Andrew Earl Moore, Deceased, And Robert J. Moore, In His Own Right and on Behalf of the Next of Kin,

v.

Bridgestone/Firestone North American Tire, LLC, Brian S. Crum, General Motors, Sunoco, Inc., Ellwood Kieser & Sons, Inc., d/b/a Kiesers TBA Center, Stockburger Chevrolet, Barry and Lois Luff, Luff & Gallagher Tire, Inc., Barry R. Luff Auto Repair, Inc. and Kerrigan Automotive, Inc.

Superior Court of Pennsylvania.

Argued March 7, 2006.

Filed Aug. 23, 2006.

Morton F. Daller, Conshohocken, for Bridgestone, appellant.

Jane B. Marton, Philadelphia, for Moore, appellee.

BEFORE: JOYCE, LALLY–GREEN, and KLEIN, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1   Appellant, Bridgestone/Firestone North American Tire, LLC ("Bridgestone/Firestone"), appeals from the pretrial discovery orders denying Bridgestone/Firestone's motions for a protective order and requiring Bridgestone/Firestone to produce documents in the two above-captioned cases. We reverse and remand.

¶ 2 Appellees in this action are S. Brian Crum, administrator of the estate of David Foster Crum, and Robert J. Moore, administrator of the estate of Andrew Earl Moore. The estates allege that Moore and Crum were killed in an auto accident after a Bridgestone/Firestone tire failed in the automobile that Moore was driving.[1]   The

---

1. In the Complaint of Moore against Bridgestone/Firestone, Appellees specifically allege: Count I- negligence; Count III- § 402A; and Count V- Breach of Warranty. *See* Complaint of Robert J. Moore, Administrator of Estate of Andrew Earl Moore. In the Complaint of Crum against Bridgestone/Firestone, Appellees specifically allege: Count 1- Negligence;

trial court stated the factual and procedural history as follows:

> This matter concerns a motion to compel the production of documents where a previous motion for a protective order was denied by a court of coordinate jurisdiction.

**Facts and Procedural History**

This product liability case stems from a car accident that occurred when a tire manufactured by Defendant Bridgestone/Firestone ("Defendant") exploded while Plaintiff was driving. The Complaint was filed December 30, 2003 and a related matter was consolidated by the Hon. Arnold New [on] November 15, 2004. On April 20, 2005 the Hon. Esther Sylvester granted Defendant's motion for a protective order, including strict confidentiality provisions. *See* Agreed Protective Order of 4–20–05. A month later Defendant filed an additional protective order[n1] regarding rubber compound formulas used to make its tires which Judge Sylvester denied May 26, 2005. Defendant appealed June 22, 2005.

---

n1 Defendant's request for an additional protective order is based on Section VII, page 5, of the Agreed Protective Order which reads in relevant part:

This Agreed Protective Order shall not preclude the parties from exercising any rights or raising any objections otherwise available to them under the rules of discovery and evidence.... Nothing in the Agreed Protective Order shall limit the rights of parties to apply for further protective orders or for modification of the terms of this Agreed Protective Order.

The validity of said order and Defendant's rights under it are not before Us. We reach only the merits of the Motion to Strike in light of Judge Sylvester's prior ruling.

Plaintiff then filed a Motion to Strike objections, Compel complete and specific responses to interrogatories, and to Produce documents. In light of Judge Sylvester's previous ruling, we granted the Motion July 13, 2005 subject to previously signed confidentiality agreements. Defendant appealed Our order July 25, 2005 and filed an emergency motion to stay discovery orders July 27, 2005[n2] which We denied August 8, 2005 after considering Plaintiff's answer.

---

n2 It is significant that the "emergency" Motion to Stay was filed four days after the court-ordered deadline for producing the documents in question.

Trial Court Opinion, 9/27/05, at 1–2.

¶ 3 Bridgestone/Firestone raises the following issues on appeal:

> Whether the trial court made an error of law and abused its discretion in denying a protective order and compelling defendant to produce its trade secrets, where:
>
> a. The court failed to shift the burden to plaintiffs to present evidence to establish that the trade secrets they sought were both relevant and necessary to the fair adjudication of their claims and that their need outweighed the resulting harm from disclosure; and
>
> b. The plaintiffs failed to present evidence, by expert witness or otherwise, that the trade secrets were both relevant and necessary to the fair adjudication of their claims and that their need outweighed the resulting harm from disclosure.

Bridgestone/Firestone's Brief at 5.

¶ 4 We first address Appellees' motion to quash. Appellees argue that the appeal should be quashed because the orders are

---

Count V- § 402A; and Count VII- Breach of Warranty. *See* Complaint of S. Brian Crum, Administrator of Estate of David Foster Crum.

interlocutory and not appealable under the collateral order doctrine.[2]

■ ¶ 5 Before we address the merits of an appellant's claim, we must determine whether the trial court's order is appealable. *In re Miscin,* 885 A.2d 558, 560–561 (Pa.Super.2005). Here, we focus on whether the trial court's orders are collateral orders under Pa.R.A.P. 313(b).

■ ¶ 6 Collateral orders are appealable as of right. Pa.R.A.P. 313(a); *J.S. v. Whetzel,* 860 A.2d 1112, 1116 (Pa.Super.2004). Rule 313(b) defines a collateral order as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost." To satisfy the doctrine, all three factors must be present. *J.S.,* 860 A.2d at 1117; *Melvin v. Doe,* 575 Pa. 264, 836 A.2d 42, 45–47 (2003). The collateral order rule must be interpreted narrowly. *Melvin,* 836 A.2d at 46.

■ ¶ 7 We first address whether the order denying the motion for a protective order is separable from, and collateral to, the main cause of action.[3] Our Supreme Court has explained that an order is "separable" from the main cause of action if it is capable of review without considering the underlying merits of the case. *Ben v. Schwartz,* 556 Pa. 475, 729 A.2d 547, 551–552 (1999) (Bureau of Professional and Occupational Affairs' claims of privilege with respect to its investigative file were analytically separate from the underlying claim of dental malpractice); *see also Hoffman*

*v. Knight,* 823 A.2d 202, 206 (Pa.Super.2003) (deliberative process privilege is separable from underlying cause of action for legal malpractice and breach of contract).

¶ 8 In the instant case, Bridgestone/Firestone claims that the trial court erred when it denied Bridgestone/Firestone's motion for protective order to preclude any dissemination of its trade secret rubber compound formulas. This claim can be addressed without analyzing Appellees' underlying causes of action for negligence, products liability, and breach of warranty. This is true even though Appellees assert that the formulas at issue could shed light on the underlying action. *See Ben; Hoffman.* Since the order appealed from is separable from, and collateral to, the main cause of action, the first prong has been met.

¶ 9 We now turn to the "importance" prong. Our Supreme Court has explained that this prong is satisfied "if the interests that would potentially go unprotected without immediate appellate review of that issue are significant relative to the efficiency interests sought to be advanced by adherence to the final judgment rule." *Ben,* 729 A.2d at 552 (citation omitted). Moreover, "it is not sufficient that the issue be important to the particular parties. Rather it must involve rights deeply rooted in public policy going beyond the particular litigation at hand." *Melvin,* 836 A.2d at 47 (citation omitted).

■ ¶ 10 In the instant case, Bridgestone/Firestone asserts that the trade secrets at issue are confidential and protected from disclosure under federal and state

---

2. Again, we note that there are two underlying orders in this case: the order denying a motion for a protective order, and the order compelling production of documents. It is undisputed that both discovery orders are interlocutory.

3. For convenience, our collateral-order analysis will focus on this first order. We note that the same analysis applies to the order compelling production of documents.

law and, therefore, involve rights deeply rooted in public policy going beyond the particular litigation at hand. "The right to confidentiality in matters involving propriety and trade secrets is rooted in public policy and impacts on individuals and entities other than those involved in the current litigation." *Dibble v. Penn State Geisinger Clinic, Inc.*, 806 A.2d 866, 870 (Pa.Super.2002) (pursuant to collateral order exception, we reviewed order denying motion for confidentiality order to prevent dissemination of information that was in the nature of trade secrets and was protected by constitutional right to privacy), *appeal denied*, 573 Pa. 666, 820 A.2d 705 (2003).[4]

¶ 11 This public policy is also reflected in Pennsylvania Rule of Civil Procedure 4012(a)(9). Section 4012(a)(9) controls the discovery of trade secrets and provides the court with authority to order that "a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way." Pa. R.C.P. 4012(a)(9). We conclude that trade-secret protection is rooted in public policy going beyond the litigation at hand, and is sufficiently important to justify immediate appellate review. *Ben; J.S.; Dibble.*

■ ¶ 12 Finally, we turn to the "irreparable loss" prong. Appellees assert that Bridgestone/Firestone will not sustain irreparable loss here because the parties had already agreed to a different protective order that would protect Bridgestone/Firestone against any disclosure during the pendency of the litigation and thereafter. Bridgestone/Firestone argues, to the contrary, that disclosure of confidential information even if pursuant to a protective order cannot be undone. Bridgestone/Firestone asserts, citing *Ben*, that there is no effective means of reviewing an order requiring the production of putatively protected material after a final judgment. It complains that dissemination of the trade secret rubber compound formula to anyone, including just the parties and experts in this case, would result in irreparable loss.

■ ¶ 13 Our Supreme Court has recognized that "there is no effective means of reviewing after a final judgment an order requiring the production of putatively protected material." *Ben*, 729 A.2d at 552 (citation omitted). Once disclosed, the confidentiality of potentially privileged information is irreparably lost. *Dodson v. Deleo*, 872 A.2d 1237, 1240 (Pa.Super.2005); *Dibble*, 806 A.2d at 870. Even though the trade secrets are intended to be disseminated only to the litigants and their experts, the reality is that there is no effective remedy for a breach of the existing protective order. Said another way, while a protective order provides some protection from dissemination, it is not foolproof. *Dibble.* Thus, Bridgestone/Firestone has established the "irreparable loss" prong in this case.

¶ 14 For these reasons, we conclude that the May 26, 2005 order denying Bridgestone/Firestone's motion for a protective order and the July 13, 2005 order requiring Bridgestone/Firestone to produce documents are collateral and appealable as of right under Pa.R.A.P. 313. We, therefore, deny Appellees' motion to quash. We turn

---

**4.** *See also Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984) (explaining that because of the intangible nature of a trade secret, the extent of the property right therein is defined by the extent to which the owner of the secret protects his interest from disclosure to others, and that if an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished).

now to the merits of whether the requested trade secret formulas are discoverable.

¶ 15 "Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." *McNeil v. Jordan*, 894 A.2d 1260, 1268 (Pa.2006). To the extent that the question involves a pure issue of law, our scope and standard of review are plenary. *Id.*

¶ 16 In the instant matter, Appellees allege that Moore and Crum died in an auto accident after Moore lost control of his vehicle when the Firestone FR440 tire separated. Appellees also assert that Bridgestone/Firestone had actual and/or constructive knowledge of defects in the manufacture and design of the Firestone FR440.

¶ 17 Bridgestone/Firestone asserts that Appellees seek discovery of trade secrets that are not relevant or necessary to adjudicate the underlying action. Bridgestone/Firestone contends that the trial court erred when it ordered disclosure of this trade secret information because the court failed to apply the appropriate legal standard for ordering discovery of trade secrets pursuant to Pa.R.C.P. 4012(a)(9). Bridgestone/Firestone argues that the appropriate legal standard involves a determination that: (1) the trade secret information is relevant and necessary, and (2) the need for the information outweighs the harm to the individual or entity resisting production.

¶ 18 We first address what a trade secret is and then what protections we afford trade secrets in our Commonwealth. Pennsylvania has adopted the definition of trade secret set forth in comment (b) to section 757 of the *Restatement (2d) of Torts* which reads: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." *Pestco, Inc. v. Associated Products, Inc.*, 880 A.2d 700, 706 (Pa.Super.2005).

¶ 19 The following factors are to be considered in determining whether given information is afforded trade secret status: 1) the extent to which the information is known outside of his business; 2) the extent to which it is known by employees and others involved in his business; 3) the extent of measures taken by him to guard the secrecy of the information; 4) the value of the information to him and to his competitors; 5) the amount of effort or money expended by him in developing the information; and 6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *Id.; Iron Age Corp. v. Dvorak*, 880 A.2d 657, 663 (Pa.Super.2005); *Van Products Co. v. General Welding & Fabricating Co.*, 419 Pa. 248, 213 A.2d 769, 775 (1965). "The crucial *indicia* for determining whether certain information constitutes a trade secret are 'substantial secrecy and competitive value to the owner.'" *O.D. Anderson, Inc. v. Cricks*, 815 A.2d 1063, 1070 (Pa.Super.2003) *citing Restatement of Torts § 757*, comment b. The record reflects, and the parties do not dispute, that the rubber compound formulas constitute valuable trade secrets. Pennsylvania law prohibits not only improper disclosure, but also improper use of another's trade secret. *See generally O.D. Anderson, Inc.*

¶ 20 Although trade secrets are afforded protection under the law, "there is no absolute privilege or unconditional bar as to disclosure of such matters." *George v. Schirra*, 814 A.2d 202, 204 (Pa.Super.2002), *citing Miller Oral Surgery, Inc. v. Dinello*, 416 Pa.Super. 310, 611 A.2d 232, 236 (1992), *appeal denied*, 533 Pa. 651, 624 A.2d 111 (1993).

Pennsylvania Rule of Civil Procedure 4012, which governs protective orders in discovery proceedings, provides as follows:

> (a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:
>
> (9) that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way.

Pa.R.C.P. 4012(a)(9). The questions of whether disclosure is to be allowed, if protection is to be afforded, and the form of such protection, are matters to be determined according to the discretion of the court. *George*, 814 A.2d at 204; *see also Hagy v. Premier Manufacturing Corp.*, 404 Pa. 330, 172 A.2d 283, 284–285 (1961) (discovery that would reveal confidential information or trade secrets to a competitor should not be allowed because an employer is entitled to equitable protection against competitive use of information acquired by former employees in positions of trust).

¶ 21 Bridgestone/Firestone argues that Pa.R.C.P. 4012(a)(9) must be read in light of strong Pennsylvania public policy to protect trade secrets. Again, it argues that Pa.R.C.P. 4012(a)(9) contemplates a standard for the discovery of trade secret information that embraces both (1) relevancy and necessity, and (2) a balancing of need versus harm.

¶ 22 The standard Bridgestone/Firestone articulates appears to be already recognized in our jurisprudence. We also observe that the standard argued by Bridgestone/Firestone is the standard used in the federal system, and that the language of Federal Rule of Civil Procedure 26(c)(7) is essentially identical to the language of Pa.R.C.P. 4012(a)(9).[5] While decisions in federal court cases have no precedential authority in our state system, we have the discretion to use the analysis of our sister federal courts to resolve our state issues. *Dominick v. Hanson*, 753 A.2d 824, 827 (Pa.Super.2000) (finding case law persuasive considering the similarities between the federal and state discovery rules after noting that Pa.R.C.P. 4003.1 is taken almost verbatim from Fed.R.Civ.P. 26(b)); *PECO Energy Co. v. Ins. Co. of N. Am.*, 852 A.2d 1230, 1234 n. 5 (Pa.Super.2004) (recognizing that while federal cases have no precedential authority in this Court, federal case law is persuasive considering the similarities between the federal and state discovery rules).

¶ 23 In the federal system, once a party establishes that the information sought is a trade secret, the burden shifts to the requesting party to demonstrate by competent evidence that there is

---

5. Fed.R.C.P. 26(c)(7) provides:

(c) **Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, accompanied by a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(7) that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a designated way[.]

Fed.R.C.P. 26(c)(7).

a compelling need for that information and that the necessity outweighs the harm of the disclosure. *Wear–Guard Corp. v. Van Dyne–Crotty, Inc.,* 1990 WL 209298, 1990 U.S. Dist. LEXIS 17039 (E.D.Pa.1990), *citing* seminal case *Hartley Pen Co. v. United States Dist. Court,* 287 F.2d 324, 331 (9th Cir.1961) (court adopted reasoning of United States Supreme Court in *Hickman v. Taylor,* 329 U.S. 495, 512, 67 S.Ct. 385, 91 L.Ed. 451 (1947), stating that the burden rests on the party who would invade the trade secret protection privacy to establish adequate reasons to justify production of the trade secrets). In summary, once the resisting party establishes that the subject of the discovery request is a trade secret, the burden shifts to the seeker of the information to persuade the court of the need and that the need outweighs the harm of disclosure. *Hartley Pen Co.,* 287 F.2d at 331.

¶ 24 We are persuaded that the approach in the federal system fairly balances the needs and concerns of the owner of the trade secrets with those of the party seeking disclosure. Thus, if the party resisting discovery demonstrates that the item sought is a protected trade secret, then the party seeking discovery is to demonstrate that production of the trade secret is relevant and necessary, and that the necessity outweighs the harm of disclosure. If the party seeking discovery makes such a showing, then the trial court may order disclosure under Rule 4012(a)(9).

¶ 25 Here, the trial court determined that the formulas sought to be produced were relevant to the instant litigation and, therefore, denied Bridgestone/Firestone's motion for a protective order. In its opinion denying Bridgestone/Firestone's Motion for a Protective Order, the court stated:

In these cases the Appellees allege injury as a result of tire failure. It is this Court's belief that the Appellant's rubber compound formula deals with the same subject matter as the underlying lawsuit. Although the Appellant's rubber compound formula may not ultimately be admissible at trial or may [not] prove germane to the matters that will be litigated, the relevancy standard applicable to discovery matters has been met.

Trial Court Opinion, 8/19/05, at 2–3.

¶ 26 In its 1925(a) opinion, the trial court (a different judge), invoking the coordinate jurisdiction rule, did not disturb the August 19, 2005 ruling:

We granted Plaintiff's Motion to Compel production of documents in view of Judge Sylvester's previous ruling the rubber compound formulas are not protected as the coordinate jurisdiction rule demands same. Judges of coordinate jurisdiction sitting in the same case should not overrule each others' decisions. *Campbell v. Attanasio,* 2004 PA Super 446, 862 A.2d 1282, 1286 (Pa.Super.Ct.2004). Departure is allowed only in exceptional circumstances where there has been an intervening change in controlling law, a substantial factual or evidentiary change, or where the prior holding was clearly erroneous and would create a manifest injustice if followed. *Id.* Defendant failed to show a factual, evidentiary, or legal change in the seven weeks which elapsed between Judge Sylvester's denial of the additional protective order and Our grant of the Motion to Compel. In addition, We are not persuaded the decision was clearly erroneous since the initial agreed-upon protective order addresses salient confidentiality issues. The "parade of horribles" Defendant invokes as potential results of producing said documents which involve

corporate sabotage, marketing of stolen formulas, and inadvertent revelation of trade secrets belong more in a James Bond movie than a Court of Law. However theatrical, Defendant fails to convince Us the above are real consequences of disclosure. Thus, Defendant fails to meet the threshold for manifest injustice as stated by the Superior Court's decision in *Campbell v. Attanasio.*

### Conclusion

Our ruling should not be disturbed under the coordinate jurisdiction rule since Judge Sylvester's previous decision reached the discoverability of rubber compound formulas. The rule benefits the judicial system in multiple ways: it promotes judicial economy; protects the parties' settled expectations; insures uniform decisions; maintains consistency; ' and effectuates the proper and streamlined administration of justice. *Campbell v. Attanasio* at 1286. Our ruling is consonant with Judge Sylvester's prior decision and therefore should not be disturbed.

Trial Court Opinion, 9/27/05, at 2–4.

¶ 27 We respectfully disagree with the learned trial court. For the reasons set forth above, we conclude that the appropriate standard embraces considerations including but not limited to relevancy with regard to trade secrets under Pa. R.C.P. 4012(a)(9).[6]

¶ 28 The record here reflects that Appellees seek all of the rubber compound formulas, including the skim stock formula for the subject tire, the P215/75R15 FR440 steel-belted radial passenger tire. Bridgestone/Firestone asserts that Appellees failed to present sufficient evidence, through testimony of expert witnesses or otherwise, to establish the necessity for the trade secret information or that the necessity for the information outweighed the harm to Bridgestone/Firestone. Indeed, the record reflects that Appellees did not offer evidence, affidavits, or expert testimony to establish necessity or that the necessity for disclosure outweighed the harm to the holder of the trade secret.

¶ 29 On the other hand, the record reflects that Bridgestone/Firestone presented evidence that the rubber compound formulas sought are not relevant or necessary to the adjudication of the claims at issue in the instant litigation. Bridgestone/Firestone presented the affidavit of its Senior Product Engineer, who explained that "rubber compound formulas are designed to achieve certain desired physical properties in the finished tire after it has been cured or vulcanized." *See* Affidavit of Brian J. Queiser, ¶ 15. There are over a dozen different rubber compounds used in the subject tire. *Id.* There is no standard formula against which to measure any other formula, because many different com-

---

6. While not controlling of the resolution of the case before us, we do observe that courts dealing with similar tire-explosion cases across the nation have refused to order disclosure of trade secret information of a tire company without sufficient evidence demonstrating the movant's need for that information. *See In re Continental Gen. Tire,* 979 S.W.2d 609 (Tex.1998) (reversing trial court for permitting disclosure of trade secrets in absence of evidence by plaintiffs that secret formulas were necessary to prove their case); *In re Bridgestone/Firestone, Inc.,* 106 S.W.3d 730, 733 (Tex.2003) (vacating trial court's order permitting disclosure of skim stock formula because plaintiffs failed to present evidence to demonstrate with specificity how information sought was necessary to their case); *Bridgestone/Firestone, Inc. v. Superior Court,* 7 Cal. App.4th 1384, 9 Cal.Rptr.2d 709 (1st Dist. 1992) (setting aside discovery order requiring production of Firestone's trade secret skim stock formula where plaintiffs failed to sustain their burden of proving necessity, despite use of expert, where expert failed to explain why formulas themselves were necessary).

pounds have proven successful in different tire products. *Id.* at ¶ 18.

¶ 30 Moreover, the curing process changes the chemical composition of the tire. Thus, the completed tire will not reveal to Appellees what ingredients were used to produce the tire. Conversely, knowledge of the formula does not aid in a determination of what physical properties the tire will have after it has been cured or vulcanized. Hence, even if Bridgestone/Firestone provided the formulas, Appellees could not use them to determine whether the manufacturing plant deviated from the formulas to produce the FR 440 tire. *Id.* at ¶ 18. Rather, after the tire is vulcanized, regardless of the formula, the tire can be inspected to determine whether it contains the proper physical properties. *Id.* at ¶ 20.

¶ 31 Bridgestone/Firestone, thus, presented evidence to support its claim that the formulas were not relevant and not necessary because they cannot, in themselves, indicate whether a manufactured tire is defective. Appellees presented no evidence to demonstrate any assertion to the contrary. Our review of the record before us reflects that, under Pa.R.C.P. 4012(a)(9), Appellees failed to demonstrate that they are entitled to the trade secret formulas of Bridgestone/Firestone tires.

¶ 32 Finally, Appellees argue that Bridgestone/Firestone's interest in secrecy will be adequately served by the existing protective order in place. As the above discussion reflects, the issue of a protective order is addressed once the trial court determines that any disclosure of a trade secret is appropriate under Pa.R.C.P. 4012(a)(9). We conclude that, based on the record before us, the highly respected trial court erred in denying Bridgestone/Firestone's motions for a protective order and in requiring Bridgestone/Firestone to produce documents. Hence, we are constrained to reverse the discovery orders entered by the learned trial court.

¶ 33 Orders reversed. Case remanded. Jurisdiction relinquished.