J-A20007-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | |
|---|---|
| SANDRA L. SHAFFER AS ADMINISTRATRIX FOR THE ESTATE OF ROSE M. LEONARD, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GRANE HEALTHCARE COMPANY; LAURELWOOD CARE CENTER, LLC D/B/A LAURELWOOD CARE CENTER; LAURELWOOD CARE CENTER, LLC D/B/A AMBER SPRINGS AT LAURELWOOD; GRANE ASSOCIATES, L.P., TREBRO, INC.; GRANE ASSOCIATES, INC.; GRANE PROPERTIES, LLC, | |
| Appellants | No. 1144 WDA 2017 |

Appeal from the Order Entered July 6, 2017
In the Court of Common Pleas of Cambria County
Civil Division at No(s): 2015-3528

BEFORE: BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY BENDER, P.J.E.: FILED OCTOBER 3, 2018

Appellants, Grane Healthcare Company ("GHC"), Laurelwood Care Center, LLC d/b/a Laurelwood Care Center ("Laurelwood"), Laurelwood Care Center, LLC d/b/a Amber Springs at Laurelwood ("Amber Springs"), Grane Associates, L.P. ("GALP"), Trebro, Inc. ("Trebro"), Grane Associates, Inc. ("GAI"), and Grane Properties, LLC ("GP") (collectively referred to herein as "Appellants"), appeal from the trial court's July 6, 2017 order granting in part their motions for protective orders. We affirm.

This case is a nursing home negligence action brought by Appellee, Sandra L. Shaffer, as administratrix for the Estate of Rose M. Leonard. A detailed summary of the underlying facts is not necessary to our disposition of this appeal. Instead, we briefly note that Ms. Shaffer alleges that Appellants negligently and/or recklessly caused her mother, Ms. Leonard, who passed away in April of 2015, to suffer injuries during her residencies at Laurelwood, a skilled nursing facility, and Amber Springs, a related assisted living facility. See Ms. Shaffer's Brief in Support of Opposition to Appellants' Motion for Protective Order Regarding Medicare Cost Reports and Home Office Reports, 5/12/2017, at 4-5. According to Ms. Shaffer, during her mother's multiple admissions to Laurelwood and Amber Springs over a course of time spanning from September 24, 2013 through March 20, 2015, Laurelwood and Amber Springs were "collectively managed, operated, owned, and/or controlled" by GHC, GALP, Trebro, GAI, GP, and Laurelwood Care Center, LLC. Id. at 5. Ms. Shaffer avers that, "[a]s a result of the individual and collective failures of [Appellants]…, [Ms.] Leonard suffered serious and preventable injuries, including the development and worsening of a necrotic stage IV pressure ulcer to her right heel, which resulted in osteomyelitis, [an] infection, in the right heel bone, UTIs, and a deep tissue injury to her right calf, poor hygiene, severe pain, and ultimately death." Id.

More germane to the issues raised on appeal are the discovery disputes that have taken place between the parties, which the trial court has summarized as follows:

[T]he history of this matter can be traced most pertinently to [Appellants'] filing a [m]otion to [d]ismiss on October 19, 2016. [Appellants GALP, GAI, Trebro, and GP (referred to herein as the Motion to Dismiss Defendants)] moved the [trial c]ourt to dismiss them from this case based on affidavits of non-involvement filed relative to the aforementioned parties. Notably, [Ms. Shaffer] opposed this motion and asked the [trial c]ourt to permit discovery on the issue of whether it is appropriate [to] dismiss the aforementioned [Motion to Dismiss Defendants]. After hearing argument on the [m]otion to [d]ismiss, the [trial c]ourt gave the parties [60] days to conduct discovery limited to the issue of whether these parties are appropriately a part of this action. This order was issued on November 21, 2016.[1] On January 17, 2017, [Ms. Shaffer] filed a series of [m]otions to [c]ompel [d]iscovery[,] which averred that she had received <u>no</u> response to [her] discovery requests. On March 1, 2017, argument was held on these [m]otions to [c]ompel [d]iscovery.

During[] this oral argument, the [trial c]ourt was informed by [Ms. Shaffer's] counsel that <u>no</u> discovery had occurred and that [Appellants] had, in fact, not served any responsive documents until 7:30 P.M. the night prior to this argument on February 28, 2017. Counsel agreed to attempt to work together to complete discovery[,] and there was a conference during which both sides agreed to produce certain items. Thereafter, on March 3, 2017, the [trial c]ourt issued an additional order limiting discovery to the temporal period of September 24, 201[3] to May 20, 2015[,] and six months prior to then. Also in this order[, the trial court] indicated that discovery must be produced relative to certain [Appellants] and that [Appellants] could not just refuse to answer

_____

[1] According to Appellants,

[a]s a result of the [m]otion to [d]ismiss, the parties became engaged in two separate sets of discovery. First, the parties are engaged in discovery related to Laurelwood, Amber Springs, and GHC (collectively "Laurelwood Defendants") for the purposes of analyzing the substantive allegations of negligence. Second, the parties are also engaged in discovery related to the [Motion to Dismiss] Defendants in order to adjudicate the [m]otion to [d]ismiss.

Appellants' Brief at 10.

or claim privilege without any supporting evidence of the same. Because there had been zero compliance by [Appellants] with [the trial court's] previous discovery order up until the time of oral argument, [the trial court] included deadlines within this seven[-]page order. On March 30, 2017, [the trial c]ourt granted [Appellants] an additional 20 days to comply with [the] order of March 3, 2017.

On April 25, 2017, [Appellants] filed a series of [m]otions for [p]rotective [o]rders regarding materials requested in discovery by [Ms. Shaffer]. On April 28, 2017, the [trial c]ourt entered an [a]mended [c]ase [m]anagement [o]rder, indicating that all discovery shall be complete by September 29, 2017[,] and setting various other deadlines. [Ms. Shaffer] filed responses opposing [Appellants'] [m]otions for [p]rotective [o]rders and filed additional [m]otions to [c]ompel [d]iscovery. On May 22, 2017, the [trial c]ourt heard further argument and[,] after receiving supplemental briefs and affidavits[,] issued an order on July 6, 2017[,] which is subject to the instant appeal.

Trial Court Order ("TCO"), 9/22/2017, at 2-3 (emphasis in original).

In more detail, as mentioned by the trial court supra, Appellants filed three separate motions for protective orders on April 25, 2017. First, Laurelwood and Amber Springs filed a motion for a protective order regarding budgets and employee files, requesting, inter alia, that Ms. Shaffer be prohibited from using these documents for any purpose other than this litigation, and that such documents shall be marked confidential and destroyed at the end of this litigation. See Motion for Protective Order Regarding Budgets and Employee Files, 4/25/2017, at Exhibit A. Second, Laurelwood and Amber Springs filed a motion for a protective order regarding Medicare Cost Reports and Home Office Cost Reports, asking the trial court to protect them from disclosure, or in the alternative, conduct an in camera review to determine the need for redactions before production. See Motion for

Protective Order Regarding Medicare Cost Reports and Home Office Reports, 4/25/2017, at ¶ 9. Finally, the Motion to Dismiss Defendants filed a motion for a protective order regarding meeting minutes and entity operating agreements, requesting that the trial court protect this information from disclosure. See Motion for Protective Order Regarding Meeting Minutes and Entity Operating Agreements, 4/25/2017, at ¶ 13. Ms. Shaffer subsequently filed responses to these motions, asserting that each protective order be denied as requested and noting that she "has no objection to a [q]ualified [p]rotective order that permits [her] counsel's law firm to use them in this case and other applicable cases against Grane Facilities." See, e.g., Ms. Shaffer's Response and Memorandum of Law in Opposition to Appellants' Motion for Protective Order Regarding Medicare Cost Reports and Home Office Cost Reports, 5/15/2017, at 3.

The trial court's July 6, 2017 order — the subject of this appeal — disposed of, inter alia, all three motions for protective orders. Therein, the trial court granted in part each of these motions, ordering that the at-issue documents be watermarked "Confidential" and "shall be used only by Wilkes & McHugh, PA[, the law firm representing Ms. Shaffer,] in this case and other applicable cases against Grane Facilities. Said documents may not be distributed to other law firms." Order, 7/6/2017, at 2.[2] On August 3, 2017,

_____

[2] Ms. Shaffer indicated that she had no objection to this relief, and proposed these restrictions in her alternate orders that she attached to her responses to the motions for protective orders.

- 5 -

Appellants filed a timely notice of appeal. The trial court instructed Appellants to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and they timely complied.

Appellants raise the following two issues for our review:

1. Did the trial court abuse its discretion by ordering [Appellants[3]] to produce their Home Office Cost Reports?

2. Did the trial court abuse its discretion by denying [Appellants'] [m]otions for [p]rotective [o]rder[s] and permitting [Ms. Shaffer] to use [Appellants'] [c]onfidential [d]ocuments in "other applicable cases against Grane Facilities"?

Appellants' Brief at 8.

Before delving into the merits of this appeal, we must determine whether the trial court's July 6, 2017 order is appealable. Appellants contend that this order satisfies the collateral order doctrine pursuant to Pa.R.A.P. 313. See id. at 1-7. This Court has explained:

An appeal may be taken only from a final order unless otherwise permitted by statute or rule. A final order is ordinarily one which ends the litigation or disposes of the entire case; however, "[a]n appeal may be taken as of right from a collateral order of an administrative agency or court." [Rule] 313(a). A collateral order is defined under [Rule] 313(b) as "an order separable from and collateral to the main cause of action where the right involved is too important to be denied review and the question presented is such that if review is postponed until final judgment in the case, the claim will be irreparably lost."

Dibble v. Penn State Geisinger Clinic, Inc., 806 A.2d 866, 869 (Pa. Super. 2002) (citation omitted; some brackets added). Thus, we consider three

_____

[3] Although the Home Office Cost Reports only seem to pertain to Laurelwood, Amber Springs, and GHC, Appellants do not specifically name these parties in their statement of the questions involved. See Appellants' Brief at 8, 19.

- 6 -

prongs in determining whether an order satisfies Rule 313: "1) whether the order [is] separable from the main cause of action, 2) whether the right involved [is] too important to be denied review and 3) whether the claim would be irreparably lost should review be denied." See id. (citation omitted). We also acknowledge that "the collateral order doctrine is to be construed narrowly[,]" and that "the collateral order rule's three-pronged test must be applied independently to each distinct legal issue over which an appellate court is asked to assert jurisdiction pursuant to Rule 313." Rae v. Pennsylvania Funeral Directors Ass'n, 977 A.2d 1121, 1126, 1130 (Pa. 2009).

Appellants rely on Dibble, supra, to argue that they have met the collateral order doctrine with respect to both of their issues. In Dibble, a medical malpractice case, we determined that a collateral order was properly before us where a health maintenance organization ("HMO") challenged the trial court's denial of its motion for confidentiality, in which the HMO sought to prevent the plaintiff from disclosing and disseminating documents that included information about, inter alia, individual physicians' compensation, salary/bonus incentive procedures, and hiring and retention policies. Dibble, 806 A.2d at 867, 870. In ascertaining whether the trial court's order was appealable as a collateral order, we first noted that "the order is clearly separable since the confidentiality of the documents at issue may be addressed without analysis of the alleged negligence of the physicians or the liability of the HMO." Id. at 870. Second, we explained that "the right to confidentiality in matters involving proprietary and trade secrets is rooted in

public policy and impacts ... individuals and entities other than those involved in the current litigation. [T]he scale tips toward the right to review when balanced against the competing interest of judicial efficiency." Id. Last, we observed that "there is no question that if the documents which have been disclosed to the plaintiff are in turn disseminated by [the] plaintiff's attorney to other individuals and entities, appellate review of the issue will be moot because such dissemination cannot be undone." Id. Thus, with all three prongs met, we concluded that the order was an appealable collateral order pursuant to Rule 313. Id.

In the case sub judice, Appellants insist that the requirements of Rule 313 are likewise satisfied. First, they assert that "the initial prong is met because the issues raised via this appeal may be addressed without analyzing the ultimate issues in the underlying case." Appellants' Brief at 2. In particular, Appellants state that, "[i]n determining these appellate issues, it is not necessary for this [c]ourt to analyze the underlying claims of negligence regarding the care and treatment rendered to Ms. Leonard." Id. at 3. Rather, "[i]t is only necessary for this Court to review the confidential nature of [Appellants'] documents and the appropriateness of the trial court's correlating orders." Id.

With respect to the second prong — whether the right involved is too important to be denied review — Appellants maintain that, like the HMO in Dibble, they "are seeking protection of their confidential and proprietary documents and information." Id. at 5. According to Appellants, "[t]he

- 8 -

disclosure of [the] Home Office Cost Reports, which contain information relating to stockholder equity, depreciation expenses, auditor reports, tax information, liability information, information concerning other entities that are not parties to this action, and masses of other sensitive financial data, clearly involve proprietary and confidential information." Id. Similarly, Appellants assert that "Medicare Cost Reports, employee files, budgets, annual meeting minutes, operating agreements, partnership agreements, and bylaws, contain sensitive and confidential information such as compensation history and salary information, procedures for staff, financial data, and internal operating procedures." Id.

Third, Appellants state that their claim would be irreparably lost if review is denied. See id. at 5-6. Appellants assert that "if the Home Office Cost Reports ordered to be disclosed to [Ms. Shaffer] are produced in this case, and further, if these documents as well as the other documents at issue are then disseminated by [Ms. Shaffer's] attorney[s] to other attorneys for use in other cases, even those within their own law firm, appellate review of the issue would be moot because such production and dissemination cannot be undone." Id. at 6. Appellants additionally point out that Ms. Shaffer's law firm, Wilkes & McHugh, "has at least 25 offices across the country, specializes in nursing home litigation, and has numerous cases pending against [Appellants] at this time that involve similar, if not identical, allegations." Id.

Based on the reasons advanced by Appellants, we agree that the July 6, 2017 order granting in part Appellants' motions for protective orders is

appealable under Rule 313.[4]  We therefore turn to the merits of Appellants' issues.

In their first issue, Appellants argue that "[t]he trial court abused its discretion in ordering the production of the Home Office Cost Reports[.]" Appellants' Brief at 19 (unnecessary emphasis and capitalization omitted). Appellants explain that the Center for Medicare & Medicaid Services ("CMS") requires certain reporting, from both the facility (in this case, Laurelwood and Amber Springs) and its management company (GHC), in order for a facility to maintain funding.  See id.  In particular, CMS requires Laurelwood and Amber Springs to submit a Medicare Cost Report, whereas GHC must issue a Home Office Cost Report.  Id.[5]  Appellants state that, "[w]hile the Medicare Cost Report is specific to a facility, the Home Office Cost Report encompasses financial and commercially sensitive information for every entity that is managed by GHC."  Id. at 19-20.  According to Appellants, the Home Office Cost Reports include trade secrets and sensitive financial data.  See id. at 21. Therefore, Appellants claim that, under Pennsylvania Rule of Civil Procedure 4012(a)(9), discussed further infra, the trial court abused its discretion by ordering the production of the Home Office Cost Reports.  See id. at 19.

_____

[4] We note that Ms. Shaffer does not contend in her brief that the trial court's July 6, 2017 order is not appealable, nor does she advance any reasons for us to quash this appeal.

[5] Appellants do not seem to specify in their brief how often the Laurelwood Defendants have to submit these reports to CMS.  However, Appellants' brief suggests that there are multiple Home Office Cost Reports that the trial court ordered them to produce.

"Generally, on review of an order concerning discovery, an appellate court applies an abuse of discretion standard." Crum v. Bridgestone/Firestone North American Tire, LLC, 907 A.2d 578, 585 (Pa. Super. 2006) (citation omitted). However, "[t]o the extent that the question involves a pure issue of law, our scope and standard of review are plenary." Id. (citation omitted).

With respect to trade secrets, this Court has previously explained:

Pennsylvania has adopted the definition of trade secret set forth in comment (b) to section 757 of the Restatement (2d) of Torts which reads: "A trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it."

The following factors are to be considered in determining whether given information is afforded trade secret status: 1) the extent to which the information is known outside of his business; 2) the extent to which it is known by employees and others involved in his business; 3) the extent of measures taken by him to guard the secrecy of the information; 4) the value of the information to him and to his competitors; 5) the amount of effort or money expended by him in developing the information; and 6) the ease or difficulty with which the information could be properly acquired or duplicated by others. The crucial indicia for determining whether certain information constitutes a trade secret are "substantial secrecy and competitive value to the owner." … Pennsylvania law prohibits not only improper disclosure, but also improper use of another's trade secret.

Although trade secrets are afforded protection under the law, there is no absolute privilege or unconditional bar as to disclosure of such matters. Pennsylvania Rule of Civil Procedure 4012, which governs protective orders in discovery proceedings, provides as follows:

(a) Upon motion by a party or by the person from whom discovery or deposition is sought, and for good cause shown, the court may make any order which justice requires

> to protect a party or person from unreasonable annoyance, embarrassment, oppression, burden or expense, including one or more of the following:
>
> [...]
>
> (9) that a trade secret or other confidential research, development or commercial information shall not be disclosed or be disclosed only in a designated way.
>
> Pa.R.C.P. 4012(a)(9). The questions of whether disclosure is to be allowed, if protection is to be afforded, and the form of such protection, are matters to be determined according to the discretion of the court.

Id. at 585-86 (some internal citations and quotation marks omitted). Further, this Court has held that,

> if the party resisting discovery demonstrates that the item sought is a protected trade secret, then the party seeking discovery is to demonstrate that production of the trade secret is relevant and necessary, and that the necessity outweighs the harm of disclosure. If the party seeking discovery makes such a showing, then the trial court may order disclosure under Rule 4012(a)(9).

Id. at 587.

In the case sub judice, we deem this issue waived. Despite Appellants' contending that the Home Office Cost Reports "should be protected as confidential trade secrets" and conceding that "trade secret status" is determined by reviewing the six factors set forth in Crum, supra, they reference these factors for the first time in their reply brief. See Appellants' Reply Brief at 14-15.[6] Based on our review of the record, Appellants fail to mention — let alone analyze — the six factors set forth in Crum in their motion

_____

[6] We note that Dibble, supra, also applies these six factors.

- 12 -

for a protective order, in their motion for reconsideration, or in their initial brief filed with this Court.

Moreover, even if properly preserved, Appellants gloss over the factors in their reply brief, failing to address most of them. See Appellants' Reply Brief at 14-15. With respect to the six factors, Appellants argue that they submitted an affidavit from Mark Levine, MHA, NHA, in which he stated that "cost reports are commercially sensitive and exempt from the Freedom of Information Act [(FOIA)]." Id. at 15 (emphasis omitted).[7] In addition, they explain that "Mr. Levine provides that the information contained within the report is not known outside of the business as individual facility data is not shared in published national data nor do nursing home associations share cost

_____

[7] We observe that the record seems to contradict this assertion to a degree. Although Appellants maintain that cost reports are exempt from the FOIA, see Appellants' Reply Brief at 15 (citing Mr. Levine's affidavit), Appellants' counsel stated at the May 22, 2017 oral argument before the trial court that some of the information may be available through FOIA requests. N.T. Motions, 5/22/2017, at 19 (Appellants' counsel: "Now, I can tell you that from other litigation with Wilkes & McHugh, they have been able to retrieve certain of this information from public sources, [FOIA] Requests to the state agencies I believe that would maintain this information…"); id. at 27 (Ms. Shaffer's counsel: "As for the cost reports, … although sometimes we have been successful with obtaining them through FOIA requests, I guess depending on who in the government is analyzing the request, our position is that it should not be on the tax payers or the government to have to pay for us to obtain discovery"); see also Appellants' Brief at 20-21 (noting that "[a]ny request received under the [FOIA] regarding a home office cost statement is subject to a case-by-case determination of whether to withhold the information in whole or in part") (citation omitted). Accordingly, it seems inaccurate to represent that cost reports are simply exempt from the FOIA, as only certain parts, if any, may be exempt. Thus, if preserved, we would find this argument unpersuasive.

report information 'because it can lead to allegations of price and wage fixing or reveal proprietary information.'" Id. at 16 (emphasis omitted).[8] Nowhere do Appellants speak to the extent to which their employees or others involved in the business know of this information, the measures taken by them (if any)

_____

[8] We also note that Mr. Levine's affidavit is unclear and confusing to us. Initially, we reiterate that Appellants have the initial burden of showing that the information in the Home Office Cost Reports is a protected trade secret. See Crum, 907 A.2d at 587. Notwithstanding, the record indicates that Appellants produced Mr. Levine's affidavit only after Ms. Shaffer submitted an affidavit from Bruce R. Engstrom, CPA/ABV, CVA, CFF, addressing, among other things, the kind of information provided in the Home Office Cost Reports and why it is neither confidential nor commercially sensitive. Affidavit of Bruce R. Engstrom, 5/22/2017, at ¶¶ 9, 10; see also N.T. Motions at 33 (Appellants' counsel: "Mr. Engstrom's report, again, I just saw this for the first time last night, so I would request the opportunity to produce something to respond to this affidavit."). As a result, Mr. Levine's affidavit is largely a response to the assertions made in Mr. Engstrom's affidavit, rather than an effort to address the factors from Crum.

More troubling, however, is that it is ambiguous whether Mr. Levine speaks to Medicare Cost Reports, Home Office Cost Reports, or both in his affidavit. Though Mr. Levine never specifically names Home Office Cost Reports, Appellants suggest that his affidavit encompasses them. See Appellants' Reply Brief at 14 ("[Appellants] have demonstrated good cause pursuant to [Rule] 4012(a)(9) to warrant protection of the Home Office Cost Reports. Moreover, the requisite good cause had been established through the [Laurelwood] Defendants' [b]riefs of [r]ecord as well as the supporting Affidavit of Mark Levine...."); id. at 16 (noting that Mr. Levine provides that the information in the Home Office Cost Reports "is not known outside of the business as individual facility data is not shared in published national data..."); but see Appellants' Brief in Support of Motion for Reconsideration, 8/3/2017, at 18-19 (addressing Home Office Cost Reports and Medicare Cost Reports separately, and stating that, with respect to Medicare Cost Reports, "Medicare provides only published national data sets and not individual facility data"). Thus, even if not waived, we would have concerns relying on Mr. Levine's affidavit to dispose of this issue.

to keep the information secret, the information's value to them and their competitors, the amount of effort and resources spent to develop the information, or how difficult it would be for others to properly acquire or duplicate the information. See Crum, 907 A.2d at 585.[9] Appellants totally disregard these factors, and consequently present an underdeveloped argument. Without arguing these factors, we cannot ascertain if the Home Office Cost Reports should be afforded trade secret status. In effect, Appellants are asking us to take their word that the information is confidential and commercially sensitive without providing any support.[10]

_____

[9] The only factor specifically discussed by Appellants is whether the information in the Home Office Cost Reports is known outside of the business. See Appellants' Reply Brief at 15-16 (relying on Mr. Levine's affidavit). In addition to the ambiguity of Mr. Levine's affidavit discussed above, Mr. Levine does not actually establish the extent to which the information is known outside of the business, but instead only responds to Mr. Engstrom's assertion that CMS "frequently publish[es] and update[s] publicly available data sets including the cost report data for all facilities." See Affidavit of Bruce R. Engstrom at ¶ 10. In other words, Mr. Levine seems to point to only one specific way the information is not known outside of the business.

[10] The trial court made this same complaint about Appellants' conduct during discovery. See TCO at 2 (advising Appellants that they "could not just refuse to answer or claim privilege without any supporting evidence of the same"); id. at 5 ("Rather than produce privilege logs or seek specific protection orders subject to in camera review of materials, [Appellants] make blanket assertions of privilege."). Appellants contend that they "did not ask the [t]rial [c]ourt to blindly accept that [complex, confidential, and commercially sensitive] information was in fact contained within the Home Office Cost Reports. [They] made multiple and formal requests for an in camera review." See Appellants' Reply Brief at 17. Consequently, they claim that "[t]he denial of [their] [m]otion for [p]rotective [o]rder in conjunction with the [t]rial [c]ourt's failure to conduct an in camera review prior to said determination, is an abuse of

Given the compounded failures by Appellants, we consider this issue waived. See Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.A.P. 2119(a) ("The argument shall be ... followed by such discussion and citation of authorities as are deemed pertinent."); Commonwealth v. Fahy, 737 A.2d 214, 218 n.8 (Pa. 1999) ("[A] reply brief cannot be a vehicle to argue issues raised but inadequately developed in [an] appellant's original brief.") (citations omitted); Milby v. Pote, -- A.3d --, 2018 WL 2728894, at *8 (Pa. Super. filed June 7, 2018) ("The failure to develop an adequate argument in an appellate brief may [] result in waiver of the claim under Pa.R.A.P. 2119. We shall not develop an argument for an appellant, nor shall we scour the record to find evidence to support an argument; instead, we will deem [the] issue to be waived.") (internal quotation marks and citation omitted; some brackets in original); Andrews v. Cross Atlantic Capital Partners, Inc., 158 A.3d 123, 130 (Pa. Super. 2017) ("Because [the d]efendants' argument on appeal advances a different legal theory..., we find this claim waived on appeal.") (citations omitted); Commonwealth v. Rush, 959 A.2d 945, 949 (Pa. Super. 2008) ("[F]or any claim that [is] required to be preserved, this Court cannot review a legal theory in support of that claim unless that

_____

discretion." Id. However, they proffer no authority to support that the trial court abused its discretion by not conducting an in camera review. Therefore, we would also reject this argument.

particular legal theory was presented to the trial court.") (citation omitted). Thus, no relief is due.[11]

In their second issue, Appellants argue that "the trial court abused its discretion by denying [Appellants'] motions for protective order[s] and permitting [Ms. Shaffer's law firm] to use [Appellants'] confidential documents in 'other applicable cases against Grane Facilities[.]'" Appellants' Brief at 23 (unnecessary capitalization and emphasis omitted). With respect to both the Motion to Dismiss Defendants and Laurelwood Defendants, Appellants claim that the documents underlying all three protective orders should not be disseminated outside of this litigation. See id. at 18, 28. In addition, they argue that the trial court's order "does not set any parameters and/or require any other relevant factual underpinnings to be present" in the other litigation, and that "[t]his blanket ability of counsel to utilize the documents in other cases is beyond the bounds of permissible discovery." Id. at 29. Furthermore, they assert that the trial court also "did not place any parameters on how said documents may be 'used' or under what

_____

[11] In light of Appellants' failure to establish that the information is a protected trade secret, Ms. Shaffer suggests that we consider removing the restrictions the trial court placed on the Home Office Cost Reports produced in discovery, i.e., that they be watermarked "Confidential[,]" used only by Wilkes & McHugh, PA in this case and other applicable cases against Grane Facilities, and not be distributed to other law firms. See Trial Court Order, 7/6/2017, at 2; Ms. Shaffer's Brief at 11, 25-26. We decline to do so, as Ms. Shaffer stated below that she "has no objection to a [q]ualified [p]rotective order that permits [her] counsel's law firm to use them in this case and other applicable cases against Grane Facilities." See Ms. Shaffer's Response in Opposition to Laurelwood Defendants' Motion for Protective Order Regarding Medicare Cost Reports and Home Office Cost Reports, 5/15/2017, at 3.

circumstances. This language is overly broad and subject to interpretation, which creates a significant injustice to [Appellants] and destroys any attempt at maintaining confidentiality." Id. at 32.

In entering the order regarding the protective orders, the trial court explained that Appellants "have failed to demonstrate good cause to justify the protective orders...." Order, 7/6/2017, at 3. Indeed, the only evidence Appellants seem to have submitted to support their motions for protective orders was the affidavit of Mr. Levine, which we explained, supra, has deficiencies and, at best, relates only to the Medicare and Home Office Cost Reports.

Once again, we look to Crum and Dibble for guidance. In Crum, the estates of two decedents killed in an auto accident sued a tire manufacturer, alleging that the fatal accident occurred when a tire made by the manufacturer exploded on the decedents' vehicle. Crum, 907 A.2d at 581-82. The tire manufacturer appealed from the trial court's discovery orders requiring it to produce certain documents pertaining to rubber compound formulas used to make its tires. See id. at 582-83. On appeal, as stated above, we determined that "if the party resisting discovery demonstrates that the item sought is a protected trade secret, then the party seeking discovery is to demonstrate that production of the trade secret is relevant and necessary, and that the necessity outweighs the harm of disclosure. If the party seeking discovery makes such a showing, then the trial court may order disclosure under Rule 4012(a)(9)." Id. at 587. In that case, we recognized that "[t]he record

reflects, and the parties do not dispute, that the rubber compound formulas constitute valuable trade secrets." Id. at 585. The estates, though, "did not offer evidence, affidavits, or expert testimony to establish necessity or that the necessity for disclosure outweighed the harm to the holder of the trade secret." Id. at 588. Nonetheless, they urged this Court to keep the trial court's existing protective order in place, arguing that it would adequately serve the tire manufacturer's "interest in secrecy[.]" Id. at 589. We declined to do so, noting that "the issue of a protective order is addressed once the trial court determines that any disclosure of a trade secret is appropriate under Pa.R.C.P. 4012(a)(9)." Id.

In Dibble — the case involving the HMO and the confidentiality of information pertaining to, inter alia, individual physicians' compensation, salary/bonus incentive procedures, and hiring and retention policies — we applied the six-factor test discussed above to ascertain that "the documents contain formulas and compilations of data and information which unmistakably reflect their intended secrecy and value to the HMO and that the information could create a competitive disadvantage for the HMO if disclosed to other managed care companies or the public." Dibble, 806 A.2d at 872; id. at 867. We additionally observed that "the HMO has clearly taken numerous measures to safeguard the information and has closely held the information to itself[,]" and thus concluded that "the subject documents are confidential and must remain so." Id. at 872. We then remanded the case to the trial court for the

entry of an order of confidentiality to prevent the dissemination of the protected information. Id.

In both cases, protective orders became relevant only after we determined that the information was confidential. Here, the crux of Appellants' argument is that Dibble had analogous information at issue, such as "compensation plans, procedures for staff, employee salary histories, and financial data — including financial statistics and breakdowns used for in-house evaluative and planning purposes[,]" and the Dibble Court deemed that similar information to be confidential and warranting protection. See Appellants' Brief at 24; see also id. at 27-28 (explaining why all of the documents sought by Ms. Shaffer contain confidential information). Yet, as discussed above, Appellants have failed to produce any supporting evidence that the information they seek to protect contains trade secrets and is confidential. Moreover, they do not adequately apply the six-factor test used in Crum and Dibble, nor do they present any other theory or authority that establishes the information's confidentiality to merit protection. Instead, they simply want us to take their word for it. As Crum and Dibble illustrate, the information must be considered confidential prior to crafting the protective order. Here, as Appellants have not established the information's confidentiality, we see no grounds to alter the trial court's order to place more protections on the documents at issue. Notwithstanding, we will not disturb the existing protections extended to Appellants, as Ms. Shaffer indicated

before the trial court that she had no objection to those restrictions. See footnote 11, supra. Accordingly, we affirm the trial court's July 6, 2017 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/3/2018